Peake vs. City of Superior.

---

PEAKE, Appellant, vs. CITY OF SUPERIOR, Respondent.

*March 21 — April 6, 1900.*

*Municipal corporations: Defect in street: Injury to traveler: Special verdict: Duplicity in question: Duty as to original construction and subsequent defects: "Ordinary care."*

1. In an action against a city for injuries alleged to have been caused by a defect in a street, the jury answered in the negative a question in the special verdict, "Was the defendant guilty of any want

of ordinary care in respect to the maintenance of the street in a proper state of repair?" *Held*, that the question covered two controverted issues,— (1) whether there was a defect, and (2) whether, if so, there had been negligence in discovering and repairing it,— and its submission was error prejudicial to plaintiff.

2. A "defect" in a street is a lack of reasonable safety; and if the jury find both that there was a defect and that the city had constructive notice thereof and time to repair, this establishes negligence without a further finding that the defect was of such a nature that a man of ordinary care and prudence would reasonably expect that an injury might result therefrom to ordinarily careful travelers.

3. The duty of a city to make a street reasonably safe in its original construction is absolute; but the duty to discover and repair defects afterwards occurring, not by acts of the municipality, is one involving only ordinary and reasonable care and diligence.

4. "Ordinary care" in such a case is that degree of care which reasonably vigilant and careful officials would and do exercise under similar circumstances.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Reversed.*

This is an action for personal injuries resulting to the plaintiff from a fall upon the street in the city of *Superior* August 2, 1898. The evidence showed that the plaintiff was a cripple, and was accustomed to ride about the streets of *Superior*, going to and from his business, in a tricycle. On the day of the accident he was riding upon one of the streets of the city, and endeavored to cross from the pavement of the street to the sidewalk on the corner of Ogden avenue and Eleventh street. At this point there is a gutter between the pavement of the street and the curbstone of the sidewalk, the depth of which does not appear with certainty; but it was eleven inches in width, and was bridged by two-inch planks, eight feet in length, running parallel with the curb, and arranged so as to be removed for the purpose of cleaning the gutter beneath. The edge of the plank toward the sidewalk was on a level with the curb, and it was intended to be supported upon that level by

means of three iron straps which were spiked on the under side of the plank, and extended up on the curb side thereof, with a flange at the top, so as to rest on the curb. It appears that, while the plaintiff's tricycle was going over this plank, it was in some manner upset, and the plaintiff was thrown into the gutter, receiving serious injuries. The plaintiff's evidence tended to show that the plank was at the time loose at one end, either on account of a defective strap and flange or because of the absence of the flange entirely, so that this end of the plank dropped when the wheel of the tricycle passed over it, thus upsetting the same and causing the injuries complained of. There was also evidence on the part of the plaintiff tending to show that the plank had been in this condition for some weeks. On the part of the defendant there was evidence to the effect that the plank was properly fixed in place at the time of the accident, and that there had in fact been no defect in the same.

The following questions were submitted to the jury as a special verdict: "(1) Was the defendant guilty of any want of ordinary care in respect to the maintenance of the street in question in a proper state of repair? (2) If your answer to question No. 1 is 'Yes,' then was such want of ordinary care the approximate cause of the injuries complained of? (3) Was the plaintiff guilty of any want of ordinary care that contributed to produce the injuries complained of? (4) What sum of money will compensate plaintiff for the damages he has sustained by reason of the injuries complained of? (5) If your answer to the first question is 'Yes,' then in what respect was this street defective at the time and place of this accident? (6) How long did such defects exist at the time of the accident?"

As to the first of these questions the circuit judge charged the jury, among other things: "Was the defendant guilty of any want of ordinary care in respect to the maintenance of the street in question in a proper state of repair? *In de-*

Peake vs. City of Superior.

*termining this question, you will consider, first, whether or not the street, at the place and time of the accident, was in a reasonably safe condition for people to travel on in the usual manner of traveling. If you find that it was, then you will answer this first question, 'No.'* If, however, you find that there was a defect in the street at the time and place of the accident, then you will consider and determine whether or not such a defect had existed for such a length of time as to give the defendant constructive notice of its existence and a reasonable time for its repair after it had such notice; *and if you find that there was a defect in the street at the time and place of the accident, and that such defect had existed for a sufficient length of time prior to the accident to give the defendant constructive notice of it and a reasonable time within which to repair it after such notice, then you will consider and determine whether or not the defect was of such a nature that a man of ordinary care and prudence would reasonably expect might result in an injury to persons using the place with ordinary care for travel in the usual and ordinary manner of traveling.* Hence, if you find from the evidence that at the time and place of the accident the street was not in a reasonably safe condition for travel in the ordinary and usual mode of travel; that such unsafe condition had existed for a sufficient length of time to give the defendant constructive notice of its existence and a reasonable time for the defendant to repair it after such notice and before the accident; and that such unsafe condition was of such a nature that a man of ordinary care and prudence would reasonably expect might result in an injury to persons using the place with ordinary care for travel in the usual and ordinary modes for traveling,— then you will answer this question in the affirmative; otherwise, you will answer it in the negative."

The plaintiff excepted to the submission of the first question, and also excepted to those clauses of the instructions printed in italics. The jury answered the first question

"No," and left the others unanswered. This verdict was received by the court, and judgment for the defendant rendered thereon, and from that judgment the plaintiff appeals.

For the appellant there was a brief by *W. P. Crawford*, and oral argument by *W. R. Foley*. They contended, *inter alia*, that with certain well-recognized exceptions, such as sudden defects from the action of the elements, latent defects, none of which figure in this case, liability for injuries sustained by reason of defective sidewalks is absolute, and the question whether or not ordinary care was exercised cannot be submitted to the jury. Sec. 1339, Stats. 1898; *Ward v. Jefferson*, 24 Wis. 342; *Draper v. Ironton*, 42 Wis. 696; *Burns v. Elba*, 32 Wis. 605; *Koenig v. Arcadia*, 75 Wis. 62.

*T. L. McIntosh*, for the respondent.

WINSLOW, J. It is entirely plain that the first question of the special verdict covers two controverted issues in the case, viz.: (1) Whether there was a defect in the street; and (2) whether it had existed so long that the city officials should have known and repaired it. The question was answered in the negative, but no one can say whether this answer means that there was no defect, or that there was a defect but that it was so recent that the city was not chargeable with notice thereof. This, however, is not the most serious vice in the question. Some of the jury may have been satisfied that there was no defect, and others that there was a defect but that it was so recent as not to charge the city with notice; and, while all would thus agree that the question should be answered in the negative, there would be no agreement upon the facts. This is just the difficulty which the special verdict is intended to obviate. "Special verdicts are worse than useless if courts do not submit for them *single*, direct, and plain questions, and insist upon positive, direct, and intelligible answers." *Carroll v. Bohan*, 43

Wis. 218.   The plaintiff was entitled to have the jury say, in answer to simple and direct questions, (1) whether there was a defect; and (2) whether, if so, there had been negligence in not discovering and repairing it.   To combine the two questions in one, so that a negative answer would inform no one what the conclusions of the jury were upon them separately, or, in fact, whether any unanimous conclusion at all was reached upon the separate questions, was, we think, prejudicial error, under the circumstances of this case.

In submitting this question the court recognized its dual character, and charged the jury first to consider and determine whether or not the street was reasonably safe (*i. e.* whether there was a defect), and if they found there was a defect, then to determine whether it had existed so long as to give defendant constructive notice of its existence and time to repair it.   So far the charge seems unexceptionable.   But the court then proceeded to say, in substance, that, if they found both defect and constructive notice, they must go further, and determine whether " the defect was of such a nature that a man of ordinary care and prudence would reasonably expect might result in an injury to persons using the place with ordinary care."   This involves confusion in terms, to say the least.   A " defect " in the street is a lack of reasonable safety.   If the street is not reasonably safe, and the city has constructive notice thereof and time to repair, then the city's negligence is established, and its liability to respond to one injured thereby while exercising ordinary care is certain.   But the court, in effect, said that if there was a defect (*i. e.* lack of reasonable safety), and constructive notice thereof and time to repair, still this was not sufficient, but that, in order to find defendant guilty of negligence, they must go further, and find that the defect was of such a nature that men of ordinary care and prudence would reasonably expect would result in injury to ordinarily care-

ful pedestrians. This test of the character of the street was distinctly repudiated in *Draper v. Ironton*, 42 Wis. 696; and it was said that the jury should be left to determine, from all the evidence as to its condition, whether the highway was or was not in a reasonably safe condition for travel, and should not have been restricted to the inquiry as to what a certain class of persons might think as to the probability of accidents happening to ordinarily careful travelers. Whatever might be said about the reasonableness of this test, as an original proposition, we see no occasion now to overrule the *Draper Case*. Certainly, in the present case, when the court told the jury that after they had found a defect and found constructive notice they must still go further and find an additional fact presumably different from anything they had before found, we think it was misleading and prejudicial.

There was considerable discussion in the briefs in this case as to the question whether the city is under an absolute duty to make and keep the streets in a reasonably safe condition, or is only bound to the exercise of reasonable and ordinary care. It seems to have been thought by counsel that there has been a change in the position of this court upon this subject since the case of *Ward v. Jefferson*, 24 Wis. 342. That case simply held that, where a highway was defectively constructed by the municipality, the statutory duty never had been performed, and the liability of the municipality for injuries resulting from such defect to travelers exercising ordinary care was absolute. Such a defect being established, the negligence of the town is conclusively proven, and the jury cannot find that ordinary care has been exercised. On the other hand, it was said in that case, in substance, that if the highway was originally constructed with reasonable safety, but afterwards became defective by action of the elements or the act of a third person, and a traveler was injured thereby, the question whether the municipal officials had no-

tice of the defect, or had exercised ordinary and reasonable care and diligence in inspecting the highway and repairing the defect, arises, and must be decided. In other words, the duty to make the street reasonably safe in its original construction is absolute; but the duty to discover and repair defects afterwards occurring, not by acts of the municipality, is one involving only ordinary and reasonable care and diligence. This latter duty may properly be called the duty to exercise ordinary care, if the term " ordinary care " be properly defined. If the question be submitted to the jury in that form, however (namely, in the form of an inquiry whether the municipality has exercised ordinary care in its inspection and repair of streets), it is manifest that some instruction should be given to the jury as to what constitutes ordinary care in such a case; otherwise, the question may well be misleading. Highway officials are bound to exercise reasonable vigilance in the care of the streets under their charge, and it is only that degree of care which reasonably vigilant and careful officials would and do exercise under similar circumstances which can properly be called " ordinary care " in such a case as the present. With this explanation of the subject, it is not believed that there has been any material divergence in the decisions upon the subject in this court.

For the reasons given, there must be a new trial.

*By the Court.*— Judgment reversed, and action remanded for a new trial.