MAYVILLE, Plaintiff, v. HART (Gordon F.), Defendant.*
HART (Rodney F.), Plaintiff, v. MAYVILLE and another, Defendants.*

*September 6—October 3, 1961.*

---

* Motion for rehearing denied. with $25 costs, on November 28, 1961.

For the appellants, Harts, there was a brief by *David S. Novick*, attorney, and *Alfred A. Frank* of counsel, both of Madison, and oral argument by *Mr. Novick*.

For the respondents, Mayville and Railway Express Agency, Inc., there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner*.

MARTIN, C. J.   The accident occurred at about 11:20 a. m. on July 21, 1959, in front of the Arbor Motel on the West Beltline just outside of Madison.   The Beltline Highway has two lanes for westbound traffic and two lanes for eastbound traffic, separated by a boulevard about 47 feet wide.   The posted speed limit was 65 miles per hour during daylight.   The motel building is located 95.62 feet south of the south edge of the concrete; the motel driveway is black-top and about 70 feet wide where it joins the pavement of the eastbound roadway of the Beltline Highway.   It was a clear day.

After Mayville had made deliveries at the motel he drove his truck along the driveway toward the eastbound lanes of the highway.   He was going slowly, about four or five miles per hour.   There was conflicting testimony as to whether he stopped before entering the highway; the jury found that he did.   There was no "stop" sign.

The question on Mayville's negligence with respect to stopping before entering the highway should not have been included in the special verdict.   It was based on sec. 346.47 (1), Stats. 1957, which provided:

"The operator of a vehicle emerging . . . or about to cross or enter a highway from any point of access other than another highway shall stop such vehicle immediately prior to moving on to the sidewalk or on to the sidewalk area extending across the path of such vehicle and shall yield the right of way to any pedestrian and upon crossing or

entering the roadway shall yield the right of way to all vehicles approaching on such roadway."

This section was created as part of the general revision of the motor vehicle laws in 1957. The bill was prepared by the legislative counsel, and the advisory committee's notes on this section state:

"The new section does not absolutely require a stop if no sidewalk or sidewalk area is involved while the present law does. [Sec. 85.18 (8), (9), Stats. 1955.]"

There was no stop sign and no sidewalk or sidewalk area at the place where Mayville entered the West Beltline. His only statutory duty was the duty to yield the right of way.

Gordon Hart was driving in the south lane of the eastbound highway as he approached the scene of the accident. He testified that when he was 500 to 800 feet from the motel driveway he saw Mayville's truck come from behind the east end of the motel and start toward the highway. Testimony as to Hart's speed is in conflict; the jury found him negligent in that respect.

Mayville testified that he stopped before entering the highway, that he made an observation to the west for eastbound traffic but did not see the Hart truck, although he could see at least 1,000 feet to his left. He then proceeded to cross the highway, angling to the right toward a crossover which connected the eastbound and westbound roadways, traveling at about four or five miles per hour.

Gordon Hart testified he was 100 to 150 feet from Mayville's truck when he saw it come out onto the highway without stopping; that he applied his brakes and turned from the south lane to the north lane in an attempt to go around the Mayville truck.

The impact occurred about five or six feet onto the crossover. The right front of Hart's pickup truck hit the left front

of Mayville's truck. The latter ended up on its side about 14 feet east of the point of impact. Hart's truck ended up on its side, in the westbound roadway, about 180 feet from the point of impact. On direct examination by respondents' attorney, a traffic officer who examined the scene of the accident testified he found some gouges about 25 to 30 feet apart which were made by the Hart truck after the impact and which, in his opinion, indicated that "the truck never lit in between." Both trucks were practically demolished.

Hart's major injuries consisted of a severely broken ankle and a lacerated sphincter mechanism, both of which cause permanent partial disability. The jury assessed his injuries at $25,000.

The jury found Mayville causally negligent as to lookout. Mayville testified he made an observation to his left before entering the highway, that all he saw was a small foreign car cresting the hill about five blocks distant and knew he had plenty of time to cross the highway without interfering with the progress of that car. The jury, in finding Mayville's lookout negligent and that negligence causal, necessarily concluded that the Hart vehicle was then at a place where Mayville should have seen it and where, had he seen it, he could have done something to avoid the accident, and where a proper observation would have informed him that the vehicles were going to collide if he did not do something to avoid it. Unless he could have observed there would be an accident if he proceeded into the highway, his negligent lookout could have had no causal relation to the collision.

It was not only Mayville's duty to yield the right of way to vehicles approaching on the highway, under sec. 346.18 (4), Stats., but also to anticipate that any approaching vehicles would very likely be moving at a high rate of speed. This was a divided highway built for the purpose of moving traffic swiftly and where the speed limit was 65 miles per

hour. Under the jury's finding, had Mayville made a proper observation, Hart's distance from him and his speed, whatever it was, would have apprised him that a collision would occur if he proceeded into the highway.

Respondents rely on the jury's finding of causally negligent speed on the part of Gordon Hart and the testimony of an independent witness, one Fox, from which the jury could have inferred that Hart was traveling at a speed in excess of the posted limit.

Hart testified that he was traveling 60 to 65 miles per hour until he braked his truck upon observing that Mayville was entering the highway. We cannot say there is anything inconsistent between the physical facts and Hart's testimony as to his speed; the jury could have believed him and relied on his testimony. However, in its charge to the jury with respect to the question of Hart's speed, the trial court read sec. 346.57 (3), Stats., requiring that a driver shall operate his vehicle at an appropriate reduced speed "when approaching and crossing an intersection," etc., and instructed as follows:

"The evidence is undisputed that just prior to and at the time of the accident Gordon F. Hart was approaching a crossover section between the lanes of traffic of the West Beltline, the juncture of which with the eastbound lanes of traffic under the statutes of the state of Wisconsin, constitutes an intersection. The two statutes which I have just read to you are safety statutes and any driver who disobeys either of these statutes is guilty of negligence."

The instruction was erroneous.

Sec. 340.01 (22), Stats., defines "highway" as:

". . . all public ways and thoroughfares . . . It includes the entire width between the boundary lines of every way open to the use of the public as a matter of right for purposes of vehicular travel. . . ."

Under sub. (15) of said statute:

" 'Divided highway' means a highway with two or more roadways separated by spaces not intended for the use of vehicular traffic."

The term "intersection" is defined in sub. (25) as:

". . . the area embraced within the prolongation or connection of the curb lines or, if none, then within the boundary lines of the roadways of two or more highways which join one another at, or approximately at right angles, whether or not one such highway crosses the other, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

And "roadway" under sub. (54) means:

". . . that portion of a highway between the regularly established curb lines or that portion which is improved, designed, or ordinarily used for vehicular travel, excluding the berm or shoulder. In a divided highway the term 'roadway' refers to each roadway separately but not to all such roadways collectively."

The definition of "highway" is very broad and it would seem to embrace a crossover, which is undoubtedly a public way for the purpose of vehicular travel. In *Brunette v. Bierke* (1955), 271 Wis. 190, 72 N. W. (2d) 702, sec. 85.10 (21), Stats. 1953, the predecessor of sec. 340.01 (22), was construed to include a concrete apron leading into a service station.

But the definition of "intersection" refers to highways in the plural—"two or more highways which join one another." The West Beltline is a "divided highway," which is referred to in sec. 340.01 (15), Stats., in the singular. Thus, the two roadways and the connecting crossovers constitute a single highway. In discussing the application of sec. 5630 (c), Revised Code of Delaware, 1935, which prohibited passing "at

any intersection of highways," the court in *Sherr v. East* (1950), 45 Del. (Terry) 240, 243, 71 Atl. (2d) 262, 264, held:

"The dual highway being but a single highway, it follows that a crossover which commences at one lane and proceeds through the grass plot to end at the other lane is nothing more than an integral part of the dual highway itself, and is not a highway which would satisfy the requirement of plurality of sec. 5630 (c). Of course, an entirely different situation results where the crossover is an extension of another highway which crosses over or joins the dual highway. In that instance, there would in fact be an 'intersection of highways' but that is not the case at bar."

Moreover, sec. 346.15, Stats., refers to "a crossover *or* intersection," making a distinction between the two. To construe an "intersection" as including the junction of the roadways of a divided highway with crossovers would lead to absurd results. For example, on the West Beltline between the junctions of Nakoma road and Fish Hatchery road, a distance of 2.38 miles, there are 15 crossovers. This highway is an arterial, designed to promote the rapid movement of traffic. To require the operator of a motor vehicle to reduce his speed at every crossover would defeat that purpose.

In instructing the jury that the crossover at which Mayville entered the highway was an intersection and that sec. 346.57 (3), Stats., requires a driver to reduce his speed "when approaching and crossing an intersection," the trial court practically compelled the jury to find Hart's speed negligent even if it believed his testimony that he was traveling at or under the legal limit.

As pointed out above, the jury may have based its finding on evidence from which it could reasonably infer that Hart was traveling in excess of 65 miles per hour, in which case

the erroneous instruction would not be prejudicial. But there was also credible evidence upon which the jury could have concluded that he was not exceeding the speed limit. Evidence from which respondent argues that Hart's testimony as to his speed is incredible is merely testimony as to estimates of distances, speeds, and relative periods of time which the jury could believe or disbelieve, so that calculations based thereon do not preclude the acceptance by the jury of the other view. In fact, the jury's finding on Mayville's lookout, as discussed above, indicates that it did not accept any interpretation of the evidence as to Hart's speed which would have placed him at such a great distance from the motel driveway that Mayville could not have observed that the approaching Hart vehicle presented a hazard to his crossing when he did. And we cannot say that either view taken by the jury as to Hart's speed would be inconsistent with the physical facts—the skid marks left by Hart's vehicle, the condition of the vehicles, and their relative positions after the collision. If the jury did believe that Hart was traveling within the legal limit, the instruction had a prejudicial effect on its determination of Hart's causal negligence as to speed, as well as on its apportionment of the negligence.

Questions are raised with respect to the damages assessed by the jury for Gordon Hart's personal injuries, but in view of the fact that there must be a new trial it is unnecessary to discuss them. While we do not think there is any prejudice shown by the jury in its assessment of damages for Hart's injuries, in our opinion a new trial should be granted on all issues.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.