Loof, Respondent, v. Rural Mutual Casualty Insurance Company, Appellant.

*October 4—October 31, 1961.*

For the appellant there was a brief by *O'Meara & O'Meara* of West Bend, and oral argument by *Stephen M. O'Meara.*

For the respondent there was a brief by *Gerold & Huiras* of Port Washington, attorneys, and *LeRoy J. Gonring* of West Bend of counsel, and oral argument by *Carl E. Gerold.*

BROADFOOT, J. The accident happened at a right-angle rural intersection. The plaintiff was proceeding in a southerly and the school bus in an easterly direction. Neither town road had been designated as a through highway but the town board prior to 1955 had caused a stop sign to be erected on the south side of the east-and-west road approximately 200 feet west of the west line of the intersection. The findings of fact found that this stop sign conformed to the rules of the state highway commission in design, colors, wording, and legibility of wording. The only issue on this appeal is whether its location conformed to such rules.

The nature of the terrain at the intersection is such that a vehicle approaching from the west has to ascend a hill and is almost into the intersection before the same is visible to the driver. This is the reason that caused the town board to erect the stop sign approximately 200 feet west of the intersection.

Sec. 349.08 (1), Stats., directs the state highway commission to "adopt rules for the design and installation of stop signs." The rules governing the design and installation of stop signs adopted by the commission which were in effect at the time of the accident in 1958 are those presently set forth in ch. Hy 11, 2 Wis. Adm. Code. We are here concerned only with the installation of such signs and the pertinent provisions of such rules relating thereto are in sec. Hy 11.04 (9), 2 Wis. Adm. Code, providing as follows:

"(9) INSTALLATION OF STOP SIGNS. (a) *Rural highways.* 1. Mounting. The sign shall be erected on a separate standard of suitable material.

"2. Height. The center of a sign shall be as near 4′ 0″ above the center line grade of the road as is practical.

"3. Location. The sign shall be placed on the right-hand side of the road facing traffic, not closer than 10 feet nor more than 40 feet from the near edge of the arterial highway. This sign shall be five to 15 feet from the edge of the road it controls.

"(b) *City and village streets*. 1. Mounting. The sign shall be erected on a metal standard or wood post, unless other suitable support for the sign is available.

"2. Height. The center of the sign shall be not less than five feet nor more than eight feet above the center line of the roadway, where parked cars may obscure the sign. Where conditions permit, the sign may be mounted as in paragraph (a) above.

"3. Location. a. The stop sign shall be erected facing traffic, on the right-hand side of the road, approximately three feet in advance of the crosswalk in the direction of approaching traffic, and as close to the curb as is practical, taking into consideration the possibility of damage by large trucks, etc. Where possible, the sign shall be so located that its visibility will be unobstructed for at least 100 feet when viewed from a driver's position in the outer traffic lane.

"b. Where the visibility of a stop sign will be obstructed by stopped buses, trolley coaches, or other large vehicles, or where the sign must be so located that it will not be visible for at least 100 feet when viewed from a driver's position in the outer lane, an auxiliary stop sign shall be erected in either the far-left or near-left location.

"4. *Special installation*. All of the above regulations for the erection of stop signs are for normal conditions and shall be used wherever possible. For special cases, where these regulations will not result in the best installation, the sign shall be erected where it will have the greatest visibility and best serve the purpose for which it is intended. Nothing in these regulations shall be construed to prohibit the use of more than one stop sign provided all signs are of standard design and one is erected in conformity to these regulations."

If the provisions of sub. (b) 4 of the afore-quoted section are applicable to rural highways, it is obvious that it would have permitted the town board to locate the stop sign where it did because of the unusual nature of the terrain at this intersection. Thus the crucial question on this appeal is whether sub. (b) 4 is to be so interpreted. Counsel for the defendant contend that it is not and invoke the canon of

statutory construction that qualifying phrases and clauses are to be construed as applying to the next-preceding antecedent provision, and cite *Fuller v. Spieker*, 265 Wis. 601, 62 N. W. (2d) 713. However, the latter case attaches to such canon this qualification (p. 605), "unless the context or the evident meaning of the enactment requires a different construction."

2 Sutherland, Statutory Construction (3d ed.), p. 474, sec. 4936, states the applicable rule as follows:

"Generally an exception is considered as a limitation only upon the matter which precedes it, but if it is clear from the legislative intent that it is considered a general limitation on the entire act it will operate to restrict all provisions of the act."

*Gatliff Coal Co. v. Cox*, 142 Fed. (2d) 876, 882, states a slightly different version of such rule in this language:

"The office of an exception in a statute is well understood. It is intended to except something from the operative effect of a statute or to qualify or restrain the generality of the substantive enactment to which it is attached and it is not necessarily limited to the section of the statute immediately following or preceding. The scope of the exception or proviso in the statute must be gathered from the view of the whole law, and if the language of the exception is in perfect harmony with the general scope of the entire statute, the exclusion is applicable to the whole act."

In a search for legislative intent great consideration is to be given to the object sought to be accomplished by the enactment. *Huck v. Chicago, St. P., M. & O. R. Co.* 4 Wis. (2d) 132, 137, 90 N. W. (2d) 154. It seems clear to us that the object of the exception embodied in sec. Hy 11.04 (9) (b) 4, 2 Wis. Adm. Code, is to enable a stop sign to be specially located where conditions of terrain would prevent a motor-vehicle operator from seeing such sign in time to take effective action if it were to be located as close

to the intersection as required under the preceding specified regulations. There is likely to be more of a need for variations in placement in a rural area than in a city or village because of the undeveloped nature of the terrain of the former. Therefore, we conclude · that the object of such statutory exception would be defeated if it were construed to be limited only to the placing of stop signs in cities and villages.

When we resort to the legislative history underlying the enactment of ch. Hy 11, 2 Wis. Adm. Code, it becomes very apparent that the highway commission intended sec. Hy 11.04 (9) (b) 4 to be applicable to the placement of stop signs in rural areas. In order to obtain such legislative history we have taken judicial notice of the records in the office of the revisor of statutes.

Sec. 227.03, Stats. 1953, enacted by ch. 331, Laws of 1953, required the commission, as a state agency, to file all rules adopted by it with the revisor of statutes. Apparently pursuant to this requirement the commission filed a certified copy of its "Regulations on the Design, Installation, and Operation of Traffic-Control Signals and Stop Signs in Wisconsin" which had been approved by the commission on August 9, 1955. The paragraph of such regulations which coincides with sec. Hy 11.04 (9) (a), 2 Wis. Adm. Code, was numbered 1.381; that which coincides in wording to sec. Hy 11.04 (9) (b) 1, 2, and 3, 2 Wis. Adm. Code, was numbered 1.382; and that which coincides with sec. Hy 11.04 (9) (b) 4, 2 Wis. Adm. Code, was numbered 1.39. Except for such difference in numbering, the wording of such August 9, 1955, regulations embraced in pars. 1.381, 1.382, and 1.39 is identical to the wording of sec. Hy 11.04 (9), 2 Wis. Adm. Code. Under such paragraph numbering employed in the August 9, 1955, regulations, we have not the slightest doubt but that the commission's intention was that the exception covered by par. 1.39 applied to installa-

tions in rural areas as well as in cities and villages. This is because such paragraph begins with the words, "All of the above regulations for the erection of stop signs."

In the meantime the 1955 legislature enacted ch. 221, Laws of 1955, creating the Wisconsin Administrative Code. Sec. 59 of such chapter required each state agency, except the industrial commission, to file a compilation of all of its rules with the revisor of statutes prior to January 1, 1956. Pursuant to such requirement the highway commission transmitted a compilation of all of its rules to the revisor of statutes on December 14, 1955. The covering letter of transmittal from the commission to the revisor reads as follows:

"We transmit herewith one certified copy of the Administrative Rules of the State Highway Commission, Chapters Hy–9, 10, 11, 12, 13, 14, 15, 16, 17, 30, 31, and 32. These constitute the compilation of the rules of the State Highway Commission, which is herewith filed with the revisor of statutes in compliance with Section 59 of Chapter 221, Laws of 1955, to facilitate the original printing of the Wisconsin Administrative Code.

"Chapters Hy–9, 10, 13, 14, 15, 16, 17, 30, 31, and 32 are either new or revisions. They have recently been adopted, are being published in the official state paper, and are herewith filed with the Secretary of State, Revisor of Statutes, and Legislative Council in compliance with Section 227.03 (3), Statutes of 1953."

We deem it most significant that the commission, in listing in the second paragraph of such transmittal letter the numbers of the chapters which were either new or revisions, omitted therefrom ch. 11. Ch. 11 contains the regulations adopted August 9, 1955, previously filed with the revisor on October 3, 1955. Thus, the omission of the commission to include ch. 11 as being either new material, or a revision, establishes that the commission did not consider ch. 11 had wrought any change in the regulations of August 9, 1955,

covering design and installation of stop signs. In view of this, we do not consider that the changing of paragraph numbers in making the transition into ch. Hy 11, 2 Wis. Adm. Code, has any materiality on the issue of statutory interpretation.

50 Am. Jur., Statutes, p. 466, sec. 448, states:

"The juxtaposition of statutory provisions as a result of rearrangements in codes, revisions, or compilations is not decisive of the effect or application of such provisions. Such rearrangements are ordinarily not regarded as altering the construction of the statutes included in the compilation. The classification and arrangement should not obstruct or obscure the interpretation of the law as a whole, or the meaning derived from the history and express provisions of the law. It is clear that the place assigned to a statute in a compilation cannot control the plain meaning expressed in the statute itself."

*By the Court.*—Judgment affirmed.