WEISS, Plaintiff-Respondent, v. CITY OF MILWAUKEE, De-
fendant-Appellant: HOLMAN, and others, Defendants.

*No. 75-404. Argued June 1, 1977.—Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 496.)

216

For the appellant the cause was argued by *Joseph H. McGinn*, principal assistant city attorney, with whom on the briefs was *James B. Brennan*, city attorney.

For the respondent there was a brief and oral argument by *Ronald L. Piette* of Milwaukee.

Briefs amici curiae were filed by: *Michael I. Tarnoff* and *Warshafsky, Rotter & Tarnoff, S. C.* of Milwaukee, on behalf of Wisconsin Academy of Trial Lawyers; *V. John Burggraf, Aaron Belongia* and *Wickert & Fuhrman* of Milwaukee, on behalf of Raymond J. Sambs; *Jean G. Setterholm,* legal counsel, and *Burt P. Natkins,* assistant legal counsel, League of Wisconsin Municipalities; *William H. Lynch* of Milwaukee, on behalf of Wisconsin Civil Liberties Union Foundation, Inc., and *Bronson C. La Follette,* attorney general, and *Charles R. Larsen,* assistant attorney general, for State of Wisconsin.

CONNOR T. HANSEN, J.    We consider the dispositive issues on this appeal to be:

1.  Whether the highway defect notice of claim statute, sec. 81.15, Stats., is applicable?

2. Whether the record supports the verdict that the city was negligent with respect to the location of a stop sign?

The accident occurred in the intersection of West Mill Road and North 84th Street. These two streets form a 90 degree intersection. North 84th Street runs north and south, and West Mill Road runs east and west. The surrounding area is residential.

The plaintiff was injured when the vehicle in which he was a passenger was struck by a vehicle driven by the defendant, James Holman. Holman was traveling north on North 84th Street; the host of the plaintiff was traveling west on West Mill Road. The accident occurred on a dark rainy evening.

West Mill Road has an official highway width of approximately 170 feet, with a 25 foot wide paved center roadway utilized for through traffic. To the south of the paved roadway, across a ditch and extending to the east and west of North 84th Street is a 25 foot wide gravel service or frontage road. The service road runs parallel to West Mill Road for several blocks and is used primarily for access to the various apartment buildings and private residences located to the south of West Mill Road. A similar gravel service road lies to the immediate north of West Mill Road, but extends only to the east of North 84th Street.

The 170 foot wide highway thus contains three separate and parallel roadways; the central paved portion, and the two gravel service roads. None of the roadways are curbed. Paved sidewalks run parallel to and north of the north service road and parallel to and south of the south service road.

North 84th Street has an official highway width of approximately 90 feet, with the paved roadway portion 48 feet wide. The street is curbed. The intersection is level, but lies approximately 600 feet to the west of a

large hill. There are no marked crosswalks at the intersection, although unmarked crosswalks exist both to the north and south of West Mill Road on North 84th Street.

On September 19, 1961, the City of Milwaukee common council declared West Mill Road to be a through street and directed that stop signs be erected to control the north and southbound traffic on streets intersecting West Mill Road. It was intended that only the central paved portion and not the service roads be the through street.

In October, 1961, the City of Milwaukee installed a pair of back-to-back arterial stop signs at the southeast corner of North 84th Street and West Mill Road. The signs were installed approximately four feet to the south of the unmarked crosswalk which existed to the immediate south of the southern gravel service road. No stop signs were located immediately adjacent to the central paved portion of West Mill Road.

One sign faced south on North 84th Street and was designed to stop northbound vehicles on North 84th Street. The other faced north and served the purpose of cautioning southbound vehicles that West Mill Road was a through street. The stop signs were approximately 78 feet from the south edge of the paved central portion of West Mill Road.

A similar pair of stop signs were installed at the northwest corner of the intersection and were intended to stop southbound vehicles, and to warn northbound vehicles of the character and width of West Mill Road. In 1967, the signs were replaced with new and larger 30 inch signs. At all times pertinent to this action the stop signs remained in the same location. There is no dispute as to that location.

The evidence is in conflict as to whether Holman stopped at the stop sign as he was proceeding north on North 84th Street.

The allegations of negligence on the part of the city are summarized in the pleadings, as follows:

". . . That the injuries and damages sustained by the minor plaintiff, MICHAEL WEISS, was [sic] proximately caused by the negligence of the City of Milwaukee, in that it:

"(a) Failed to install, erect and place a stop sign at the Southeast corner of the intersection of North 84th Street and West Mill Road after having declared West Mill Road to be a through street;

"(b) Negligently installed, erected and placed a stop sign at said intersection at a point where it did not serve the purpose for which it was intended;

"(c) Violated Section 349.08 (2) Wis. Stats. and Wisconsin Administrative Code, Hy. 11.03, Installation of Stop Signs, in that the aforesaid stop sign was not erected at the point where a vehicle was to stop or as near thereto as practicable;

"(d) Violated Sec. 349.08 (2) Wis. Stats. and the Wisconsin Administrative Code, Hy. 11.03, Installation of Stop Signs, in that it did not erect the stop sign where it would best serve the purpose for which it was intended."

The answer of the city denied the essential allegations of negligence and, as affirmative defenses alleged compliance with the Wisconsin Administrative Code's provisions governing the placement of stop signs, and claimed that the plaintiff failed to comply with the notice-of-claim requirement of sec. 81.15, Stats.[1]

Further facts will be set forth in our consideration of the issues.

## SECTION 81.15, STATS.

The city contends that the trial court erred in denying its motion to dismiss which was based upon the plaintiff's noncompliance with the notice provisions of sec. 81.15, Stats., commonly referred to as the highway defect statute.

---

[1] This case has been before this court previously on appeal by one of the other defendants. *Weiss v. Holman,* 58 Wis.2d 608, 207 N.W.2d 660 (1973).

It is undisputed that the plaintiff failed to give written notice of the accident to the city within 120 days thereof as prescribed in sec. 81.15, Stats. It appears that the first actual notice given to the city was in the form of a claim for damages submitted on January 6, 1971, some two years after the accident. Thus, if sec. 81.15, did apply, the trial court would have erred in failing to dismiss the action unless the element of estoppel was involved. *Harte v. Eagle River*, 45 Wis.2d 513, 173 N.W.2d 683 (1970); *Ocampo v. Racine*, 28 Wis.2d 506, 137 N.W. 2d 477 (1965); *Lang v. Cumberland*, 18 Wis.2d 157, 118 N.W.2d 114 (1962).

The advancement of this argument requires a consideration of both sections 81.15 and 895.43(1), Stats. Essentially, sec. 81.15 provides that no action for damages to a person or his property by reason ". . . of the insufficiency or want of repairs of any highway . . ." could be maintained against the city unless notice thereof was given to the city within 120 days after the happening of the event.

Sec. 895.43(1), Stats., provides that no tort action could be maintained against the city unless notice was served upon the city within 120 days after the happening of the event causing the injury or damage. This section, however, specifically provides that failure to give the requisite notice ". . . shall not bar action . . ." if the municipality had actual notice of the damage or injury and the injured party shows to the satisfaction of the court, that failure to give notice was not prejudicial to the municipality.

The difference between sections 81.15 and 895.43(1), Stats., was expressed in *Harte v. Eagle River, supra,* pp. 517, 518:

"Prior to *Holytz v. Milwaukee* (1962), 17 Wis.2d 26, 115 N.W.2d 618, and the abrogation of municipal immunity, sec. 81.15, Stats., was a major exception to the rule of municipal nonliability. Thus municipalities would often times try to establish that damages were not caused by highway defects and in this manner avoid liability. Since the abrogation of governmental immunity and the enactment of sec. 895.43, municipalities argue that damages are caused by highway defects and seek to escape liability under the notice provisions of sec. 81.15.

". . .

"The converse is also true, *i.e.*, plaintiffs will now attempt to avoid sec. 81.15, Stats., and qualify under sec. 895.43. Both of these statutes require that notice be given within one hundred twenty days of an alleged accident and the limits of liability are $25,000. However, the more rigorous notice requirements of sec. 81.15 can be avoided if only sec. 895.43, which provides for actual notice if the delay or failure is not prejudicial, is applicable. . . ."

*See also: Schwartz v. Milwaukee*, 43 Wis.2d 119, 123, 168 N.W.2d 107 (1969) ; *Dusek v. Pierce County*, 42 Wis.2d 498, 504, 167 N.W.2d 246 (1969).

Whether or not sec. 81.15, Stats., applies to the facts of this case is dependent upon whether the plaintiff's action is based upon a highway defect as that term has been defined by this court's decisions. In *Schwartz, supra*, 122, 123, this court noted the narrowness of the area of negligence covered by sec. 81.15, Stats., stating:

". . . We point out, again, as we did in *Dusek v. Pierce County* (1969), 42 Wis.2d 498, 167 N.W.2d 246, and in *Stippich v. Milwaukee* (1967), 34 Wis.2d 260, 149 N.W. 2d 618, that sec. 81.15, Stats., only applies to a small area of negligent conduct by a municipality and in this area does not necessarily cover all the negligence which might relate to highways. One may have negligence on the part of a city in respect to a public highway which does not amount to a defect or a want of repair as those terms have been heretofore construed by this court in consider-

ing sec. 81.15. Hence, sec. 81.15 does not pre-empt all causes of action relating to highways. . . ."

Traditionally, the language of sec. 81.15, Stats., ". . . insufficiency or want of repairs of any highway . . ." has been interpreted to refer to physical defects existing on the traveled surface of the highway or to the absence or insufficiency of warnings of those physical defects.[2]

The allegations of negligence in the complaint are based upon the alleged failure of the city to locate the stop sign in the position required by the applicable statutes and provisions of the Wisconsin Administrative Code. The question is whether the alleged negligent placement or location of a stop sign constitutes an insufficiency or want of repairs of a highway within the terms of the statute and as defined by this court.

The city relies upon language in *Raisanen v. Milwaukee,* 35 Wis.2d 504, 151 N.W.2d 129 (1967), for the proposition that highway defects also include defects in the maintenance or operation of traffic signs. In *Raisanen, supra,* the plaintiff alleged negligence in the installation, maintenance and programming of traffic lights. This court affirmed the trial court's order sustaining the defendant's demurrer to the complaint on the grounds that the defendant had programmed the traffic lights in accordance with the applicable statutes and highway commission rules. This court also found a second basis to affirm the order sustaining the demurrer in deciding the issue of whether sec. 81.15, Stats., or sec. 895.43 (1), applied. This court held that under the alle-

[2] *Armour v. Wisconsin Gas Co.,* 54 Wis.2d 302, 307, 195 N.W.2d 620 (1972); *George v. Milwaukee,* 41 Wis.2d 92, 94, 163 N.W.2d 166 (1968); *Heritage Mut. Ins. Co. v. Sheboygan County,* 18 Wis.2d 166, 169, 118 N.W.2d 118 (1962); *Cable v. Marinette County,* 17 Wis.2d 590, 593–595, 117 N.W.2d 605 (1962); *Peake v. Superior,* 106 Wis. 403, 409, 82 N.W. 306 (1900); *Ziegler v. West Bend,* 102 Wis. 17, 20, 78 N.W. 164 (1899).

gations of the complaint, sec. 81.15 applied, stating at p. 515:

"Any defect in the maintenance or operation of traffic control signals necessarily constitutes a highway defect within the meaning of sec. 81.15, Stats., under our holding in *Firkus v. Rombalski. . . .*"

We deem the above quoted statement in *Raisanen, supra,* inappropriate. In the case of *Firkus v. Rombalski,* 25 Wis.2d 352, 130 N.W.2d 835 (1964), the issue of the applicability of sec. 81.15, Stats., never actually arose. This court recognized the inappropriateness of the statement in *Raisanen, supra,* when two years later in *Schwartz, supra,* 123, where the issue involved similar allegations of the failure to maintain a viaduct, bridge and related equipment, it was stated:

"*. . .* In *Dusek* we held the allegations of the failure to erect a road sign constituted negligence although not actionable, and not a defect or want of repair under sec. 81.15. In *Firkus v. Rombalski* (1964), 25 Wis.2d 352, 130 N.W.2d 835, we held the failure to replace an arterial sign was actionable negligence and we did not refer to sec. 81.15."

Moreover, in *Dusek, supra,* 505, this court specifically indicated that the circumstances presented in *Firkus, supra,* did not constitute allegations of a highway defect:

"*. . .* In *Firkus v. Rombalski* (1964), 25 Wis.2d 352, 130 N.W.2d 835, this court accepted the plaintiff's assertion that the duty to maintain signs already erected was not the allegation of a highway defect, but was rather actionable under other forms of negligence for which a municipality could be liable subsequent to *Holytz.*"

This court in *Dusek, supra,* 505, further explained the limits of sec. 81.15, Stats., negligence:

"The accident occurred, according to the undisputed facts, not because the highway was insufficient or be-

cause it was out of repair, but because the county failed to erect a sign warning not of a hazardous highway condition but of the likelihood of approaching traffic on the intersecting road.

"In regard to the safety of the road, the undisputed facts, as revealed by the affidavits, indicate that the road itself is perfectly safe from a structural and construction point of view, and there is no allegation, such as we have had in some cases, that the roadbed was too soft, that it was constructed too close to a precipice, or that there were inadequate guardrails. Rather, whatever lack of safety exists comes from the municipality's failure to recognize the hazards of increased traffic and its failure to warn users of the intersecting highways of the hazards of that traffic.

"It is thus apparent that the facts reveal evidence of negligence only in the failure to erect proper signs. It seems clear that this is a type of negligence not contemplated under sec. 81.15, Stats. . . ."

We conclude that, consistent with our prior holdings on the applicability of sec. 81.15, Stats., the negligence of the city, as here alleged by the plaintiff, does not constitute a highway defect under sec. 81.15.

The city also argues that even if sec. 895.43 (1), Stats., applies, the failure to give timely notice is still a bar to an action unless the plaintiff shows to the trial court's satisfaction that actual notice was given and that the failure to comply with the 120-day time requirement was not prejudicial to the city. The city asserts that not only is the complaint devoid of an allegation of no prejudice, but that the plaintiff made no attempt either at trial or thereafter to establish a lack of prejudice.

The plaintiff had the burden of proving the giving of notice or actual notice and the nonexistence of prejudice. The plaintiff was not required to allege those two facts, however, in the complaint. *Rabe v. Outagamie County,* 72 Wis.2d 492, 498, 241 N.W.2d 428 (1976) ; *Majerus v.*

*Milwaukee County,* 39 Wis.2d 311, 317, 159 N.W.2d 86 (1968). The city was required to plead the lack of compliance with sec. 895.43(1), Stats., as a defense. *Rabe, supra,* 498; *Majerus, supra,* 317. A review of the answer of the city reveals that it failed to do so.

In any event no evidence of prejudice to the city is advanced. The record amply supports the finding of the trial court that actual notice was given to the city at least by January 6, 1971. The record also reflects that during the course of the proceedings the trial court gave careful consideration to the issue of possible prejudice to the city, finding that none existed.

The trial court did not err in denying the motion of the city to dismiss the action for failure to comply with the notice statutes.

## NEGLIGENCE.

At the close of the plaintiff's case, the city moved for a directed verdict. The motion was denied. On appeal, the city contends the trial court erred in not directing a verdict in favor of the city because the city had complied with the applicable statutes and highway commission rules as set forth in Chapter HY 11 of the Wisconsin Administrative Code. It is our opinion that motion of the city for a directed verdict should have been granted.

The trial court in its instructions to the jury in this case stated:

"If you determine that under the Wisconsin Statutes and the Highway Commission rules as stated to you that the City had an alternative of two sites within which to place a stop sign for the Mill Road through highway, one being directly facing the Mill Road and the other in front of the crosswalk preceding the access road, then the fact that the City chose the site of placing the stop

sign in front of the crosswalk which preceded the access road is not to be considered by you as an act of negligence on its part, for under those circumstances the law will not permit a jury to substitute its judgment for the City engineering and traffic commission.

"However, if you find that under the Wisconsin Statutes and the Highway Commission rules as stated to you that the City had a duty to place a stop sign directly in front of the Mill Road through highway and that it failed to do so, then the failure to perform such duty would be negligence on its part."

As applicable to the city, the special verdict contained the following question:

"QUESTION NO. 5: At and prior to the accident in question was the defendant City of Milwaukee negligent with respect to the location of the stop signs at the intersection of North 84th Street and West Mill Road?"

The jury answered the question "Yes," and also found that such negligence causally contributed to the plaintiff's injuries.

The negligence question submitted to the jury called upon it to answer questions of law as well as questions of fact. It required the jury to determine what constituted the intersection and where the city should have placed the sign. These are questions of law to be answered by the court in accordance with the applicable statutes and administrative rules. The question of fact to be determined by the jury was whether the city did, in fact, place the sign where the law and rules required it to be placed. *Chart v. Dvorak*, 57 Wis.2d 92, 203 N.W.2d 673 (1973). In *Chart, supra,* the highway commission rules provided that the warning sign be placed approximately 750 feet from the condition warned of. The question of fact to be determined was the actual placement of the sign. The facts in the instant case do not present such a situation.

Under the facts of this case, the boundaries of the intersection and the determination of where the sign should have been placed require a legal determination based upon the application of the statutes and rules. These are questions of law determinable by the court, not the jury. *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 385, 386, 225 N.W.2d 454 (1975).

The pertinent provisions of Chapter HY 11 of the Wisconsin Administrative Code provide:

"*Hy 11.03 Installation of stop signs.* (1) RURAL HIGHWAYS. (a) . . .

"(b) . . .

"(c) . . .

"(2) CITY AND VILLAGE STREETS. (a) *Mounting.* Stop signs shall be erected on a suitable standard or support adequate to maintain the signs at the required height, location, and position.

"(b) *Height.* Stop signs shall be erected so that the bottom of the sign is not less than 7 feet nor more than 9 feet above the centerline grade of the roadway where parked cars may obscure the sign. Where conditions permit, stop signs may be erected at the heights specified in subsection (1).

"(c) *Location.* 1. Stop signs shall be erected at the point where the vehicle is to stop or as near thereto as possible. They shall be erected on the right-hand side of the street facing traffic they are intended to control, and as nearly as practical at right angles to the centerline of the street.

"2. Stop signs shall be approximately 4 feet in advance of the crosswalk in the direction of approaching traffic. In curbed roadway sections, the left edge of the sign shall be as close to the curb as is practical (approximately 1 foot), but not more than 3 feet from the face of curb. Where there is no curb, signs shall be as close to the edge of the traveled way as practical.

"3. Where possible, stop signs shall be so located that their visibility will be unobstructed for at least 150 feet

when viewed from a driver's position in the outer traffic lane.

"4. Where the visibility of a sign may be impaired by stopped buses or other larger vehicles, or where the sign must be placed where it will not be visible for at least 150 feet, an auxiliary stop sign shall be erected in either the far-left or near-left position at the standard height and location with respect to distance from both roadways.

"(3) INSTALLATION UNDER SPECIAL CONDITIONS. (a) All of the foregoing regulations with respect to the height and location of stop signs are for normal conditions, and shall be applicable wherever possible. In special cases, where exact conformance to these regulations would not result in the best installation, the sign shall be erected where it will best serve the purpose for which it is intended.

"(b) Nothing in these regulations shall be construed to prohibit the use of more than one stop sign on each approach to an arterial highway, provided that all signs are of standard design and one is erected in conformity to these regulations."

The following facts are not in dispute: That the rural highway rules are not applicable; that there was no clearly marked painted stop line at the intersection; that there were no marked crosswalks at the intersection; and that visibility or observation of the intersection was unimpeded from the point where the stop sign was actually located. Of particular importance in the case at bar is sec. 11.03(3) of the highway commission rules entitled "INSTALLATION UNDER SPECIAL CONDITIONS," which relates to the placement of stop signs under special conditions, as the subtitle implies.

Sec. 340.01(25), Stats., defines intersection as follows:

"(25) 'Intersection' means the area embraced within the prolongation or connection of the curb lines or, if none, then within the boundary lines of the roadways of 2 or more highways which join one another at, or approximately at right angles, whether or not one such

highway crosses the other, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

Whether the intersection here comprised only the crossing of West Mill Road and North 84th Street, or whether it comprised the crossing of West Mill Road and the two frontage roads by North 84th Street, was a question of law to be determined by the trial court. *See: Gustin v. Johannes,* 36 Wis.2d 195, 153 N.W.2d 70 (1967); *Mayville v. Hart,* 14 Wis.2d 292, 110 N.W.2d 923 (1961); *Eberdt v. Muller,* 240 Wis. 341, 2 N.W.2d 367, 3 N.W.2d 763 (1942). The trial court failed to make that determination.

Under the definition of the statute and the holdings of the above cited cases, the intersection here comprised the crossing of West Mill Road and the two frontage roads by North 84th Street. West Mill Road and the two closely proximated frontage roads comprised a highway[3] consisting of three separate and parallel roadways.[4] That highway crossed North 84th Street and created an area ". . . within which vehicles traveling upon different highways . . . may come in conflict."

The plaintiff contends that there were three separate and distinct intersections comprised of the crossing of

---

[3] Sec. 340.01(22), Stats., defines highway. *"(22)* 'Highway' means all public ways and thoroughfares and bridges on the same. *It includes the entire width between the boundary lines of every way open to the use of the public as a matter of right for the purposes of vehicular travel. . . ."*

[4] Sec. 340.01(54), Stats., defines roadway. *"(54)* 'Roadway' means that portion of a highway between the regularly established curb lines or that portion which is improved, designed or ordinarily used for vehicular travel, excluding the berm or shoulder. In a divided highway the term 'roadway' refers to each roadway separately but not to all such roadways collectively."*

North 84th Street and each of the three separate road-ways. We do not agree with such a contention. *See: Mayville, supra,* 297–300. In this case, that could ulti-mately require three separate stops for a vehicle proceed-ing north on North 84th Street. Where separate road-ways of a highway are in such close proximity and parallel, as is the case here, the intersection must be deemed to be bound by the outside boundaries of the two outer separate roadways.

It must be acknowledged that this is an unusual inter-section. Sec. 11.03(3) of the highway commission rules states that where conformance to the other applicable regulations would not result in the best installation, the stop sign shall be erected where it will best serve the purpose for which it is intended.

That provision clearly grants to the city certain discre-tion as to the exact location of the sign. The discretion is twofold: (1) The discretion to determine whether special conditions exist; and (2) the discretion to determine where under the circumstances, the sign would best serve the purpose for which it was intended.

The city, in the exercise of its discretion, placed the stop sign at the southeast corner of the intersection. No assertion is made that it abused its discretion; indeed, no such assertion could be successfully maintained.

*Loof v. Rural Mut. Casualty Ins. Co.,* 14 Wis.2d 512, 111 N.W.2d 583 (1961), concerned the placement of a rural stop sign and did not directly involve the liability of a municipality. Nevertheless, this court was called upon to consider the then existing "[s]pecial installa-tion" provisions of the highway commission rules which were almost identical to those of sec. 11.03(3) of the present highway commission rules. In *Loof, supra,* the stop sign was placed some 200 feet in advance of the intersection. The specific highway commission rules di-

rected the placement of rural stop signs not closer than 10 feet nor more than 40 feet from the near edge of the arterial highway. This court stated at page 515:

"If the provisions of sub. (b) 4 [special installation] of the afore-quoted section are applicable to rural highways, it is obvious that it would have permitted the town board to locate the stop sign where it did because of the unusual nature of the terrain at this intersection. . . ."

Thus under the statutes and highway commission rules there was, under these circumstances, no specific duty of the city to place the stop sign in a particular place. The city, in the exercise of its discretion, erected the sign in the place so determined where it would best serve the purpose for which it was intended. The city was not negligent in the placement of the sign after making this determination. The motion of the city for a directed verdict should have been granted. The judgment is reversed and the cause remanded with directions to dismiss the complaint against the city.

The city presents two additional issues and the plaintiff, supported by several amicus curiae, has filed a notice of review. In view of our disposition of the cause, it is unnecessary to reach these issues.

*By the Court.*—Judgment reversed and cause remanded, with directions to dismiss the complaint against the City of Milwaukee.