Bobby FELDER, Plaintiff-Appellant and Cross-Respondent and Cross-Petitioner,

v.

Duane CASEY, Patrick Eaton, Robert Farkas, Peter Pochowski, Robert Connolly, Edward Heideman, Stanley Olsen, Roger Weber, Michael Kempfer and Gary Hoffman, Defendants-Respondents and Cross-Appellants-Petitioners.

Supreme Court

*No. 85–1344. Argued April 29, 1987.—Decided June 24, 1987.*

(Also reported in 408 N.W.2d 19.)

For the plaintiff-appellant and cross-respondent and cross-petitioner there were briefs by *Curry First, Barbara Zack Quindel* and *Perry, First, Lerner & Quindel, S.C.,* Milwaukee, and oral argument by *Curry First.*

For the defendants-respondents and cross-appellants-petitioners there were briefs by *Reynold Scott Ritter,* assistant city attorney, with whom on the briefs was *Grant F. Lanley,* city attorney, and oral argument by *Reynold Scott Ritter.*

LOUIS J. CECI, J. This is a review of an unpublished decision of the court of appeals, dated April 24, 1986, which reversed in part and affirmed in part a judgment by the circuit court for Milwaukee county, Circuit Judge Robert W. Landry. Specifically, the appeals court reversed the trial court's determination that the two-year statute of limitations period under sec. 893.57, Stats., was to be applied retroactively to the civil rights claims brought by Bobby Felder (Felder) under 42 U.S.C. secs. 1983 and 1985, against several city of Milwaukee police officers. The appeals court decided that the three-year statute of limitations, sec. 893.54(1), should apply to Felder's claim instead of the two-year period. Second, the appeals court affirmed the trial court's holding that sec. 893.80, the notice of claim statute, was inapplicable to

sec. 1983 actions brought in state court. Finally, the appeals court affirmed the trial court's decision that the mere existence of state tort remedies, under which Felder might have recovered, should not operate to preclude the institution of an action based on sec. 1983. While the issue of the applicability of sec. 893.80 to sec. 1983 actions brought in state court against municipalities and municipal employees presents a question of first impression, we believe that this case may be disposed of on the basis of sec. 893.80 alone.[1]

[1]Section 893.80(1), Stats., provides that:

**"Claims against governmental bodies or officers, agents or employes; notice of injury; limitation of damages and suits.** (1) Except as provided in sub. (1m), no action may be brought or maintained against any ... governmental subdivision or agency thereof nor against any officer, official, agent or employe of the ... subdivision or agency for acts done in their official capacity or in the course of their agency or employment upon a claim or cause of action unless:

"(a) Within 120 days after the happening of the event giving rise to the claim, written notice of the circumstances of the claim signed by the party, agent or attorney is served on the ... governmental subdivision or agency and on the officer, official, agent or employe under sec. 801.11. Failure to give the requisite notice shall not bar action on the claim if the ... subdivision or agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant ... subdivision or agency or to the defendant officer, official, agent or employe; and

"(b) A claim containing the address of the claimant and an itemized statement of the relief sought is presented to the appropriate clerk or person who performs the duties of a clerk or secretary for the defendant ... subdivision or agency and the claim is disallowed. Failure of the appropriate body to disallow within 120 days after presentation is a disallowance. Notice of disallowance shall be served on the claimant by registered or certified mail and the receipt therefor, signed by the claimant, or the returned registered letter, shall be proof of service. No action

Because we believe that sec. 893.80 does apply to federal civil rights actions which are brought in state court and because Felder has not satisfied the requirements of that statute, we reverse the decision of the court of appeals. Since our holding operates to bar Felder from proceeding further, we need not, under these facts, consider the remaining issues posed by the parties.

I.

Bobby Felder was stopped by Milwaukee police officers during the early evening hours of July 4, 1981, outside his home in Milwaukee. Police were combing the neighborhood, looking for an armed individual who was reported to be in the area. The police stopped Felder to question him, but according to police reports, Felder was uncooperative and began to yell and shout profanities, thereby attracting neighborhood attention. Neighbors' attempts to exonerate him were successful, as the police reportedly told Felder to leave the scene and go home. However, Felder continued to be loud and abusive and reportedly pushed an officer. Minutes later, members of the Milwaukee Police Department Tactical Enforcement Unit (TEU officers) arrived on the scene. The TEU officers proceeded to arrest Felder on charges of disorderly conduct. Felder alleges that the officers "beat [him] with batons, carried him to a paddy wagon while he was partially unconscious, and threw him through the air and into the paddy wagon." The charges against Felder, who is

on a claim against any defendant ... subdivision or agency nor against any defendant officer, official, agent or employe, may be brought after 6 months from the date of service of the notice, and the notice shall contain a statement to that effect."

black, were ultimately dropped. The officers present at the scene of the arrest were all white. An armed individual was later apprehended and arrested pursuant to the officers' initial investigation.

On April 2, 1982, Bobby Felder commenced a lawsuit in Milwaukee county circuit court, naming two Milwaukee police officers as defendants. Two amended complaints (one filed in January, 1983, and the other in March, 1984) named additional police officers as defendants, as well as the city of Milwaukee and the chief of police for the Milwaukee police department. The complaint alleged that the defendants acted under color of law to intentionally deprive Felder of his civil rights under 42 U.S.C. secs. 1983 and 1985(2). Felder also advanced state law tort and conspiracy claims. Felder sought compensatory and punitive damages in an amount totaling $2.3 million, plus costs and attorney fees, as provided for under 42 U.S.C. sec. 1988.

In each of their answers, including the answers to the first and second amended complaints, defendants raised the affirmative defense of noncompliance with sec. 893.80, Stats.

Following the voluntary dismissal of the action as to several of the defendants and the dismissal of some of the claims, trial proceeded on March 4, 1985, on four remaining claims: (1) false arrest, in violation of federal and state law; (2) use of excessive force, in violation of the fourteenth amendment to the United States Constitution, and assault and battery, in violation of state law; (3) false imprisonment, in violation of federal and state law; and (4) conspiracy, in violation of the fourteenth amendment and state law.

After the defense rested its case, the trial court entertained several motions. Defendants first moved

for dismissal on the basis of plaintiff's alleged failure to comply with sec. 893.80, Stats. The court granted defendants' motions with respect to each of the claims which were based on state tort law principles, but denied the motion with respect to the remaining civil rights claims which were based on federal law. The court reasoned that sec. 893.80 was not intended to bar the institution of a lawsuit based on federal civil rights laws. The court heard and decided other motions. In the most significant of these rulings, the trial court held that the two-year statute of limitations for intentional torts, sec. 893.57, applied to Felder's civil rights claims, rather than the three-year statute of limitations contained in sec. 893.54(1) applicable generally to "injuries to the person." This holding operated to dismiss Felder's civil rights claims with respect to those defendants who were added to the lawsuit by the amended complaint, which was filed after the two-year limitations period had expired.

Felder appealed the statute of limitations question to the court of appeals. The ten remaining defendants cross-appealed, asserting that the civil rights claims should never have been brought because a notice of claim under sec. 893.80 had never been filed. The appeals court first reversed the trial court on the statute of limitations issue, holding that the three-year period under sec. 893.54(1) was applicable, citing *Wilson v. Garcia,* 471 U.S. 261 (1985), for support. The appeals court next addressed defendants' arguments on cross-appeal, holding that sec. 893.80 was inapplicable to secs. 1983 and 1985 actions, citing *Doe v. Ellis,* 103 Wis. 2d 581, 587–88, 309 N.W.2d 375 (Ct. App. 1981). The court addressed other arguments raised by defendants in their cross-appeal and summarily affirmed the trial court on those issues. A petition

for review was filed on behalf of the police officer defendants by the city attorney of the city of Milwaukee. The city sought review of three issues, including the appeals court's disposition of the statute of limitations question and its summary affirmance of the trial court's ruling which was based on sec. 893.80, Stats. Felder filed a cross-petition for review, arguing a violation of his constitutional rights based on actions taken by the court during the course of trial, primarily relating to the dismissal of certain defendants from the lawsuit. This court granted both the petition for review and the cross-petition for review on September 16, 1986.

## II.

The issues which we believe to be dispositive in this case may be posed as follows: Do the notice of claim provisions contained in sec. 893.80, Stats., apply to federal civil rights actions brought in state court? And, if so, were the statutory requirements enumerated therein complied with in this case?

The city argues that compliance with sec. 893.80 is a condition precedent to the institution of any lawsuit commenced in state court against a municipality or its employees, including a lawsuit which is based on federal civil rights laws. Felder made the choice to proceed in state court and should be bound by state procedures. Section 893.80, the city further argues, is not inconsistent with the U.S. Constitution or federal law. The city argues that states are free to regulate the manner in which cases may be prosecuted in their courts provided that those regulations fall within constitutional limits, citing *Kramer v. Horton,* 128 Wis. 2d 404, 383 N.W.2d 54, *cert. denied* — U.S. —, 107

S. Ct. 324 (1986), in support.[2] The city also cites cases in other jurisdictions where courts have upheld the application of state notice statutes to federal civil rights claims and have stated that those statutes do not offend federal policy. The city states that the purpose of the statute is to enable a municipality to "compromise the claim and settle it without a costly and expensive lawsuit," quoting *Gutter v. Seamandel,* 103 Wis. 2d 1, 9, 308 N.W.2d 403 (1981). This statutory purpose does not frustrate federal law because a plaintiff who complies with the notice requirements retains the opportunity to negotiate and pursue the sec. 1983 claim. The right to go forward with the civil rights claim remains unaffected. And the municipality, due to the notice requirement, is given the opportunity to investigate the claim and attempt to settle it, if desired, without being forced to proceed immediately to the adversarial setting in the courtroom. Finally, the city reiterates that it is not seeking to enforce the imposition of a state procedural rule in a federal forum; rather, it is seeking only to reaffirm the necessity of imposing state procedural rules on those litigants who choose to press their claims, whether based on state or federal law, in state court. Felder made his choice and should not now be heard to argue that state procedures should not apply to him.

Felder, on the other hand, argues that a state procedural rule cannot operate to preclude a potential litigant from obtaining relief for violations of constitu-

---

[2]The decision of this court in *Kramer* reversed, in part, the decision of the appeals court below. *See,* 125 Wis. 2d 177. For purposes of clarity, we will refer to the decision of the court of appeals as *Kramer I* and will refer to the supreme court decision as *Kramer II.*

tionally protected rights. Principles of supremacy, Felder argues, should control and operate to preclude application of sec. 893.80 to claims brought in state courts under the federal civil rights laws.

### III.

The court of appeals has twice addressed the question of whether the notice of claim statute applies to sec. 1983 actions brought in state court. In *Doe,* 103 Wis. 2d 581, the appeals court held that the notice of claim statute was inapplicable to a lawsuit commenced under sec. 1983, stating that, "We agree that this state procedural statute cannot bar a congressionally created right to obtain relief for violations of federal constitutional rights by persons acting under color of law." 103 Wis. 2d at 588. The court cited *Perrote v. Percy,* 452 F. Supp. 604 (E.D. Wis. 1978), as authority. The court in *Perrote* said that,

> "Acceptance of the defendants' position [that the notice of claim statute should apply] would unacceptably elevate subtleties of state procedural law above the avenue of relief created by Congress for the protection of federal constitutional rights from deprivations by persons acting with state authority." 452 F. Supp. at 605 (citation omitted).

Similarly, in *Kramer v. Horton,* 125 Wis. 2d 177, 371 N.W.2d 801 (Ct. App. 1985) (*Kramer I*), the appeals court, citing *Perrote* and *Doe,* held that the plaintiff's failure to comply with the notice of claim statute did not bar his claim for relief under the federal civil rights laws.

Also at issue in *Kramer* was whether the plaintiff there was required to exhaust his administrative remedies before proceeding with his sec. 1983 action

in state court. The appeals court held that the plaintiff was not required to do so. The defendants in *Kramer* petitioned this court for review of that decision, and we held that where state administrative remedies are adequate and available, a plaintiff bringing a sec. 1983 claim is required to exhaust his administrative remedies prior to commencing suit in state court. *Kramer II,* 128 Wis. 2d at 419. In so holding, this court emphasized the inapplicability of *Patsy v. Board of Regents,* 457 U.S. 496 (1982), which held that plaintiffs pursuing sec. 1983 claims need not exhaust administrative remedies before proceeding with litigation in federal court. The court stated that *Patsy* was not controlling under the facts in *Kramer* because *Patsy* involved a sec. 1983 action brought in federal court, *not* state court. State courts and legislatures, as stated in *Kramer II,* retain the right under the tenth amendment to the U.S. Constitution "to prescribe the procedural scheme under which claims may be heard in state court." 128 Wis. 2d at 417.

This court noted further in *Kramer II* that a state court may be faced with interests and concerns which are very different from those which a federal court must deal with when deciding whether a given procedural rule, such as the exhaustion of remedies rule, should be adopted. *Id.* The court discussed those interests and concluded that application of the exhaustion doctrine to sec. 1983 suits brought in state court is not "inherently inconsistent with" the purposes sec. 1983 is designed to serve. *Id.* at 418.

This court in *Kramer II* never reached the issue of the applicability of the notice of claim statute to sec. 1983 claims brought in state court. Thus, this case presents a question of first impression.

Previous decisions by this court which have dealt with the notice of claim statute and its statutory predecessors have primarily involved negligence-type actions brought against a municipality or its employees. *See, e.g., Patterman v. Whitewater,* 32 Wis. 2d 350, 145 N.W.2d 705 (1966); *Harte v. Eagle River,* 45 Wis. 2d 513, 173 N.W.2d 683 (1970). It has been said that the primary purpose of a notice of claim statute is to give the municipality the opportunity to attempt to compromise the claim and effect settlement before the parties are forced to proceed with a lengthy or costly lawsuit. *Patterman,* 32 Wis. 2d at 357.

> 'Statutory ... provisions requiring presentation of claims or demands to the governing body of the municipal corporation before an action is instituted are in furtherance of a public policy to prevent needless litigation and to save unnecessary expenses and costs by affording an opportunity amicably to adjust all claims against municipal corporations before suit is brought.' *Id.,* quoting 38 Am. Jur., *Municipal Corporations,* sec. 674 at 383 (footnote omitted).

Significantly, Wisconsin's notice of claim statute was limited, in previous versions, *see,* sec. 895.43, Stats. (1975), only to tort actions. However, the current version of the statute, created by ch. 285, Laws of 1977, is not so limited and states simply that "no action may be brought ..." without statutory or actual notice of the claim.[3]

---

[3]In *Figgs v. City of Milwaukee,* 121 Wis. 2d 44, 52, 357 N.W.2d 548 (1984), this court stated that "sec. 893.80 is not a statute only applicable to tort claims or claims for negligence. The opening sentence of sec. 893.80 recites its applicability to *any* cause of action." (Emphasis added.)

Courts in other jurisdictions have explicitly held that notice of claim statutes shall apply to *all* actions, including actions founded on civil rights violations. The city cites *Indiana Dept. of Public Welfare v. Clark,* 478 N.E.2d 699 (Ind. Ct. App. 1985), *cert. denied* — U.S. —, 106 S. Ct. 2893 (1986), as an example. In *Clark,* the Indiana court decided that compliance with a notice of claim provision contained in the Indiana Tort Claims Act was a prerequisite to the institution of a sec. 1983 suit in state court. The court rejected the plaintiff's arguments in *Clark* that the notice of claim provision was contrary to federal policy because it was arguably in the nature of a statute of limitations. Instead, the court stated that the claim provision

> "... is a procedural precedent which must be fulfilled before filing suit in a state court.... Because it is a procedural precondition to sue, it overrides the procedural framework of sec. 1983 when the litigant chooses a state court forum." 478 N.E.2d at 702 (citations omitted).

Also, *see, Mills v. County of Monroe,* 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456, *cert. denied* 464 U.S. 1018 (1983), holding that a state notice of claim statute may be imposed on litigants suing under the federal civil rights laws in state court. With regard to the claim under 42 U.S.C. sec. 1981 at issue in *Mills,* the court stated that,

> "Although Congress established no timeliness or notice requirements to apply to section 1981 actions brought in Federal court, these courts have been instructed that, when interstices or voids occur in the Federal law, they should borrow the applicable State rule of law so long as it is not 'inconsistent with the Constitution and laws of the

United States'.... This court ... does not find that the State's notice requirements are antithetical to the policy underlying the civil rights laws." 59 N.Y.2d at 309–10, 451 N.E.2d at 457 (quoting 42 U.S.C. sec. 1988; case citations omitted). Also, *see, Robertson v. Wegmann,* 436 U.S. 584, 588 (1978).

The court went on to say that a notice of claim statute is meant to serve the important state interest of enabling a municipality to protect itself against stale or fraudulent claims, concluding that "the general restrictive effect of a state notice of claim requirement does not of itself bar its application to Federal civil rights actions" brought in state court. 59 N.Y.2d at 311, 451 N.E.2d at 458.

We are well aware that courts in other jurisdictions have refused to apply state notice of claim statutes to actions based on a violation of federal civil rights laws. *See, Perrote,* 452 F. Supp. at 605; *Willis v. Reddin,* 418 F.2d 702 (9th Cir. 1969); *Donovan v. Reinbold,* 433 F.2d 738, 742 (9th Cir. 1970); *Rosa v. Cantrell,* 705 F.2d 1208, 1221 (10th Cir. 1982), *cert. denied* 464 U.S. 821 (1983); and *Brown v. United States,* 742 F.2d 1498, 1509 n. 6 (D.C. Cir. 1984), *cert. denied* 471 U.S. 1074 (1985). The city repeatedly indicates, however, that these cases have involved the applicability of state notice provisions to civil rights suits brought *in federal court. But see, Williams v. Horvath,* 16 Cal. 3d 834, 129 Cal. Rptr. 453, 548 P.2d 1125 (1976). Thus, their applicability to these facts—where the issue is whether a state notice of claim statute should be applied to a federal claim brought *in state court*—is arguably minimal, if not nonexistent.[4]

[4]For this reason, we are not convinced by the analysis of the appeals court in *Kramer I* and *Doe.* To support these holdings, the

The city argues, persuasively, that our recent holding in *Kramer II* provides substantial support for the proposition that a state may impose procedural requirements on litigants choosing a state forum for adjudication of their federal civil rights claims and that it, and not the cases cited by Felder, *supra,* should be dispositive. We agree. We see no reason why, consistent with our holding in *Kramer II,* a litigant availing himself or herself of state court resources should not be required to abide by state court rules and procedures, including the notice of claim provision at issue here. We now hold that failure to comply with sec. 893.80, Stats., bars a litigant who is pressing a federal civil rights claim from proceeding with that claim in state court. "While the Constitution vests in Congress 'the power to prescribe the basic procedural scheme under which claims may be heard in federal courts,' ... it reserves to the state legislatures and state courts the power to prescribe the procedural scheme under which claims may be heard in state court." *Kramer II,* 128 Wis. 2d at 417 (citation omitted). The point we wish to reiterate is simply that litigants who choose to press their claims in state court cannot "elect" to ignore state procedural rules. The right to sue in state court is accompanied by the corollary duty to abide by certain rules and procedures. Section 893.80 is an example of just such a procedure.

court of appeals necessarily relied on the decision of the federal court in *Perrote,* which involved the distinct question of the applicability of the state notice of claim statute to 42 U.S.C. sec. 1983 claims brought in a *federal* forum.

The remedial and deterrent purposes underlying sec. 1983 actions are not frustrated simply because a state court litigant must abide by state court procedures. The notice of claim statute does not operate to limit the amount that a plaintiff might recover for a violation of his or her civil rights.[5] Nor does the notice requirement operate to preclude a plaintiff's possibility for recovery. The plaintiff remains free, of course, to litigate the civil rights claims in federal court. *See, Kramer II,* 128 Wis. 2d at 419. Our holding in no way precludes plaintiff from pursuing that option.

Even if the plaintiff gave no statutorily required written notice, and it is undisputed that he did not, that failure is not fatal under the statute if the city had "actual notice" of the claim *and* if the plaintiff shows that the failure to give notice was not prejudicial to the city. Felder contends that the city received actual notice of his claim within hours of his arrest. He points to the presence of city of Milwaukee alderman Roy Nabors at the scene of the arrest and argues that the city police department had completed the initial phase of its investigation into the Felder arrest within hours of its occurrence. Felder further maintains that the city was not prejudiced by the plaintiff's failure to provide it with statutory notice of the claim.

It is conceded that a police investigation into Felder's arrest was underway shortly after its occurrence. The record contains several police reports, each of which was individually prepared by the various officers who were present during the arrest or who

---

[5]Analogies made by Felder to *Thompson v. Village of Hales Corners,* 115 Wis. 2d 289, 340 N.W.2d 704 (1983), are therefore inapplicable.

directly participated in it. The police captain in charge of the district in which the arrest occurred was made aware of the arrest and of the various police reports. The record also reflects that alderman Nabors contacted then police chief Harold Breier, by letter, to personally inform him of the Felder incident.[6] Felder argues that these facts would support a finding that the city had actual notice of the claim, sufficient to satisfy the statute.

We disagree. In *Nielsen v. Town of Silver Cliff*, 112 Wis. 2d 574, 334 N.W.2d 242 (1983), we held that the defendant municipality had actual notice of the plaintiffs' claim, despite the fact that the written communications said to satisfy the actual notice standard were not received until more than 120 days after the event causing the injury had occurred. However, the "actual notice" came in the form of two letters: (1) a letter from plaintiffs' attorney to the city's insurer, notifying the insurer of his clients' injuries, and (2) a letter to the municipality from the plaintiffs themselves which included a *claim for damages.* 112 Wis. 2d at 581. The court in *Silver Cliff* cited *Weiss v. Milwaukee,* 79 Wis. 2d 213, 255 N.W.2d 496 (1977), to support its holding. In *Weiss,* it was also

---

[6]Alderman Nabors' letter, dated July 7, 1981, reads in pertinent part as follows:

"Dear Chief Breier:
   "This note conveys the enclosed complaints originally made verbally to me about 10:00 p.m. on July 4, 1981.
   "...
   "Please review the enclosed complaints, and let me know the results of your investigation ..... ."

Attached to the note were the "complaints" of five individuals, each of whom described their recollection of the events of the evening in question.

undisputed that the defendant municipality never received timely written notice. However, the court there found that, again, a written claim for damages, submitted nearly two years after the accident in question, was sufficient to satisfy the "actual notice" standard. 79 Wis. 2d at 223, 228.

While we do not hold that a detailed claim for damages must be submitted before the actual notice standard can be satisfied, *see, Figgs,* 121 Wis. 2d at 51–52, we nevertheless do not believe that the communication from alderman Nabors is sufficient to satisfy the actual notice standard. Nor are the "communications" to the city via the district police reports sufficient. Documents which have been held to constitute adequate notice have usually, at a minimum, recited the facts giving rise to the injury and have indicated an intent on the plaintiffs' part to hold the city responsible for any damages resulting from the injury. *See, Patterman,* 32 Wis. 2d at 353–54; *Harte,* 45 Wis. 2d at 521; *Silver Cliff,* 112 Wis. 2d at 576; *Figgs,* 121 Wis. 2d at 47; *Gutter,* 103 Wis. 2d at 5; *Lang v. Cumberland,* 18 Wis. 2d 157, 158, 118 N.W.2d 114 (1962).

The record in this case does not support a finding of actual notice. Therefore, we need not delve into the question of whether the city suffered prejudice as a result of the plaintiff's failure to provide notice. In sum, we hold that plaintiffs advancing federal civil rights claims in state court are required to comply with the notice of claim statute, sec. 893.80, Stats. Felder's failure to do so here, via either statutory or actual notice, operates to preclude him from proceeding further in this action in state court. We therefore reverse the decision of the court of appeals and

remand to the trial court with instructions to dismiss this action.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court with instructions.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). The court's holding bars a citizen of Milwaukee who alleges he was beaten by police officers from seeking a federal remedy (sec. 1983) in state court because he did not file written notice of the circumstances of his claim. This court maintains this position even though the city concedes it was actually notified (but not in compliance with the statute), and the circuit court made no finding with regard to whether the city suffered any prejudice as a result of the plaintiff's failure to file the notice.

I cannot join the majority in concluding that the notice of claims provision (sec. 893.80), enacted in response to the abrogation of sovereign immunity, was intended to or should somehow override a federally created remedy designed to vindicate civil rights.

I conclude that sec. 893.80 is inapplicable to this lawsuit for two reasons: the intent of Congress and the intent of the Wisconsin legislature. Neither Congress nor the Wisconsin legislature intended the Wisconsin notice of claims statute to apply to a 1983 action in state courts.

The United States Supreme Court has apparently concluded that Congress intended sec. 1983 actions to be viewed as analogous to claims for personal injuries sounding in tort, not as analogous to state remedies for wrongs committed by public officials. *Wilson v. Garcia,* — U.S. —, 105 S. Ct. 1938, 1949 (1985). If this court were to treat this case like a personal injury

claim sounding in tort, as Congress apparently intended, and not like a remedy for wrongs committed by a governmental officer, sec. 893.80 would not be applicable. Our court has concluded that state courts dealing with sec. 1983 claims should implement only state laws which are "not inconsistent with the constitution and laws of the United States." *Thompson v. Village of Hales Corners,* 115 Wis. 2d 289, 340 N.W.2d 704 (1983). I conclude that the majority's applying the notice of claims statute (sec. 893.80) is inconsistent with the laws of the United States.

Furthermore I believe that the Wisconsin legislature did not intend sec. 893.80 to apply to federal causes of action against governmental officers. The Wisconsin legislature adopted sec. 893.80, Stats. 1985–86, in response to *Holytz v. Milwaukee,* 17 Wis. 2d 26, 115 N.W.2d 618 (1962), which abrogated the principle of governmental immunity from tort liability. The state judicial doctrine of governmental immunity is not generally a significant concept in sec. 1983 litigation. *Brown v. United States,* 742 F.2d 1498, 1507–10 (D.C. Cir. 1984). While I recognize that sec. 893.80 is no longer limited to tort claims, I do not believe that the legislature intended sec. 893.80 to be applicable to this federal cause of action.

For the reasons set forth, I dissent. I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN joins in this dissent.

WILLIAM A. BABLITCH, J. (*dissenting*). Bobby Felder, a black citizen of Milwaukee, was arrested on Independence Day, July 4, 1981, for a crime he did not commit. During the course of the arrest, witnessed by his neighbors and family, he was allegedly beaten by five Milwaukee police officers and thrown partially

unconscious into the back of a paddy wagon. Within hours, an alderman from the City was on the scene. Also within hours, the Milwaukee Police Department had other officers on the scene investigating the incident and taking statements from witnesses, a process that continued for two days. By July 7, the Chief of Police was informed of the incident by letter from the alderman who was at the scene. I dissent.

One can scarcely conceive of facts more ripe for resolution under sec. 1983.

Yet the majority today denies Bobby Felder access to the state courts to litigate his sec. 1983 claim. The majority concludes that his failure to formally file a "Notice of Claim" with the Milwaukee City Clerk within the 120 days set by Wisconsin statutes, sec. 893.80, Stats., denies him access to the state courts. Although that statute also allows *actual* notice in lieu of formal written notice, the majority concludes that no *actual* notice of this incident was given to the City.

In *Perrote v. Percy,* 452 F. Supp. 604 (E.D. Wis. 1978) the court ruled the notice provision of sec. 895.45(1), Stats. 1975, (actions against state officials) did not apply to a sec. 1983 action because

> "[a]cceptance of the defendant's position would unacceptably elevate subtleties of state procedural law above the avenue of relief created by Congress for the protection of federal constitutional rights from deprivations by persons acting with state authority." *Id.* at 605.

The majority attempts to distinguish *Perrote* by pointing out that *Perrote* was brought in federal court, while this claim was brought in state court. Apparently, the majority perceives that although it is inappropriate to elevate subtleties of state procedural law

above the relief Congress intended in federal court, it is appropriate to do so in state court.

I conclude that a 120 day notice requirement is a subtlety of state procedural law that must give way to the vindication of federal rights in state courts.

The failure to do so by the majority is made more egregious by their conclusion that there was no *actual* notice by the City, notwithstanding the facts that the alleged acts were done by five agents of the City, a City alderman came to the scene within hours, an investigation was begun within hours by other police officers, further investigation by police supervisory officers took place within 48 hours, and direct communication was given within three days to the Chief of Police of the City. One of the primary purposes of the notice statute is to allow the government unit an opportunity to promptly investigate such incidents. As this court said in *Nielsen v. Town of Silver Cliff*, 112 Wis. 2d 574, 580, 334 N.W.2d 242:

> "The purpose of sec. 895.43(1) is to avoid prejudice to governmental units resulting from the late filing of claims. Specifically, the notice requirements are designed to ensure that governmental units have a sufficient opportunity to investigate all incidents giving rise to tort claims. Thorough investigations guard against specious claims and may help prevent similar accidents in the future."

That purpose was more than fulfilled in this case. If these facts and circumstances do not constitute *actual* notice under the statute, "actual notice" has become meaningless.