Argued and submitted April 6, the decision of the Court of Appeals and judgment of the circuit court reversed and remanded for further proceedings July 26, 1988

ROGERS,
*Petitioner on Review,*

*v.*

SAYLOR et al,
*Respondents on Review.*

(CC A8409-05447; CA A35289; SC S34838)

760 P2d 232

Gregory Kafoury, Portland, argued the cause and filed the petition for petitioner on review.

Janet Noelle Billups, Special Counsel for Multnomah County Counsel, Portland, argued the cause for respondents on review Saylor, Blackman, Hill and Multnomah County. With her on the response to the petition for review was Laurence Kressel, County Counsel for Multnomah County, Oregon, Portland.

Elden M. Rosenthal, of Rosenthal & Greene, P.C., Portland, filed a brief on behalf of *amicus curiae* American Civil Liberties Union.

Richard C. Baldwin, of Baldwin & Brischetto, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers' Association.

David B. Williams, Assistant County Counsel, Lane County Office of Legal Counsel, Eugene, filed a brief on behalf of *amicus curiae* Association of Oregon Counties.

Robert D. Durham, of Durham, Drummonds, Colombo & Smith, Portland, filed a brief on behalf of *amicus curiae* Oregon Education Association.

Jerome Lidz, Assistant Attorney General, and Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem, filed a brief on behalf of *amicus curiae* Department of General Services.

Douglas R. Andres and I. Franklin Hunsaker, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

JONES, J.

## JONES, J.

This case presents the question whether the limitations on individual and governmental liability contained in the Oregon Tort Claims Act (OTCA), ORS 30.260 to 30.300, most specifically in ORS 30.270,[1] apply to an action which states a claim under the federal civil rights act, 42 USC § 1983,[2] when that federal claim is brought in state court.

Plaintiff's complaint contains two claims. His first claim is against deputies for the Multnomah County Sheriff's Office for assaulting him in violation of his rights under the Fourth, Fifth and Fourteenth Amendments to the federal constitution. By alleging that this was done under color of law, plaintiff stated a cause of action under section 1983. Plaintiff alleged that the deputies' conduct was "within the course and scope of their employment,"[3] and that, as a result of the

---

[1] ORS 30.270 provides in pertinent part:

"(1) Liability of any public body or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:

"* * * * *

"(b) 100,000 to any claimant for all other claims arising out of a single accident or occurrence.

"* * * * *

"(2) No award for damages on any such claim shall include punitive damages. The limitation imposed by this section on individual claimants includes damages claimed for loss of services or loss of support arising out of the same tort."

[2] 42 USC section 1983 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[3] This language invokes the provisions of ORS 30.265. At the time plaintiff filed this action, ORS 30.265 (1983) provided in pertinent part:

"(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function. As used in ORS 30.260 to 30.300, 'tort' includes any violation of 42 U.S.C. section 1983.

"(2) Every public body is immune from liability for any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employe or agent of a public body when such officer, employe or agent is

attack, he suffered general damages of $110,000. He further alleged that the officers acted with malicious intent and that he was entitled to $25,000 in punitive damages. Plaintiff also sought reasonable attorney fees under federal law 42 USC section 1988.[4]

Plaintiff alleged a second claim for relief, claiming the same damages against Multnomah County. This claim was not based upon any acts of the county, but solely on the terms of ORS 30.265(1), which makes public bodies liable for the tortious conduct of their employes.

The trial court dismissed the first claim when plaintiff refused to replead after the court granted defendants' motion to strike plaintiff's allegation of general damages in excess of $100,000, punitive damages and attorney fees. The trial court granted defendants' motion on the ground that plaintiff's remedy against the individual defendants was subject to the limitations of the OTCA as set forth in ORS 30.270.

---

immune from liability.

   "(3) Every public body and its officers, *employes* and agents *acting within the scope of their employment or duties* * * * *are immune from liability for:*

   "* * * * *

   "(d) Any claim which is limited or barred by the provisions of any other statute."

Subsection (1) has since been amended to read:

   "Subject to the limitations of ORS 30.260 to 30.300, every public body is subject to action or suit for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function * * *." Or Laws 1987, ch 705, § 7.

[4] 42 USC section 1988 provides:

   "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title 'CIVIL RIGHTS,' and of Title 'CRIMES,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The OTCA limits liability of public bodies and their employes acting within the scope of their employment to $100,000 per claimant for all claims arising out of a single occurrence and prohibits any award of punitive damages. The circuit court held in abeyance any action on the second claim of relief against the county, pending disposition of plaintiff's first claim on appeal.[5]

The Court of Appeals held that plaintiff could not recover damages in excess of $100,000 under the OTCA, nor could he recover punitive damages. The court allowed attorney fees, and this decision as to attorney fees is not contested here. *Rogers v. Saylor,* 88 Or App 480, 746 P2d 718 (1987). We reverse the decision of the Court of Appeals and the judgment of the circuit court and remand the case to the circuit court for further proceedings consistent with this opinion.

We dispose of this case as follows:

I.  Plaintiff may assert a cause of action either under Oregon common law or section 1983 of the federal act against the deputy sheriffs as individuals, unfettered by any (a) compensatory or (b) punitive damages limitation. Plaintiff's claim under the OTCA is subject to the Act's damages limitations.

II.  Plaintiff may proceed against Multnomah County under the OTCA[6] solely for compensatory damages not to exceed $100,000 for tortious conduct by the deputies acting within the scope of their employment.

## I.  CLAIMS AGAINST
## THE DEPUTIES AS INDIVIDUALS

In reaching the above conclusions, we first address the claims against the officers as individuals. In order to hold the officers potentially liable without a limitation on damages, we must address whether the officers are immune because of any provisions of the OTCA. ORS 30.265(3) provides:

> "Every public body and its officers, employes and agents acting within the scope of their employment or duties * * * are immune from liability for:

---

[5] The procedural aspects of this appeal caused the Court of Appeals great concern and also disturb us. However, like the Court of Appeals, we are able to weave a legal path through the pretrial orders and judgment to reach the merits.

[6] We note that ORCP 18B(1) now provides that "the amount sought in a civil action for noneconomic damages * * * shall not be pleaded in a complaint." Noneconomic damages are defined in ORS 18.560(1).

"* * * * *

"(d) Any claim which is limited or barred by the provision of any other statute."

ORS 30.270 limits the liability of officers acting within the scope of their employment to $100,000 to any claimant for all claims arising out of a single occurrence. Thus, it would appear that the statute would limit the individual liability of the officers to $100,000 for conduct within the scope of their employment. ORS 30.285 provides that the state shall indemnify the officers against any tort claim up to this amount. The OTCA purportedly immunizes the officers for any claim beyond the amount of reimbursement for tortious conduct by the officers acting within the scope of their employment or duties. Neither the OTCA nor section 1983 alters any state common-law claim that plaintiff may have against the officers as individuals acting outside the scope of their duties.

■        The question before us specifically concerns a section 1983 action brought in state court. Distinguishing the related actions is necessary, however, because it is the interplay among the common law, section 1983 and the OTCA which gives rise to the question before the court and which we must understand to resolve that question. Assuming, then, that the OTCA provides a limited immunity to the officers when sued in an individual capacity under the OTCA, does the statutory immunity have any effect on the officers' liability under section 1983? The quick and final answer is "no."

Defendants rely on two related themes to support their argument that the OTCA can limit liability under section 1983. The first is the reasoning of the Court of Appeals that, while Congress created section 1983, it did not intend to override state law. From this the Court of Appeals concluded that state-created limits can apply to federal claims brought in state court. The second approach skirts the issue whether federal law overrides state law by viewing the question as one of procedural jurisdiction. Under this view, whether Congress created a federal right is irrelevant to the question whether Oregon state courts procedurally may limit section 1983 actions in any fashion the legislature dictates. We will begin with the first question.

A. *Did Congress override state law for individual liability under section 1983?*

■     Section 1983 was passed at a time when few, if any, states had a corresponding statutory cause of action. Thus the question is not strictly whether Congress, in passing section 1983, intended to override conflicting state statutes in effect at that time. The question, instead, is whether Congress intended that the federal remedy created by section 1983 would be a self-contained remedy, unaffected by any subsequent state law.[7]

At common law, prior to the enactment of the OTCA in 1968, police officers were not immune from liability for tortious conduct committed within the scope of employment. *See, e.g., Anderson v. Maloney,* 111 Or 84, 225 P 318 (1924). So far as we can tell from the history of this state, police officers have never enjoyed such an immunity. In this regard, Oregon law corresponded to the general common law of the other states. It is important to focus on the status of police officers as it existed in 1871, for that was the year Congress passed what is now section 1983. The United States Supreme Court has held on numerous occasions that the common-law immunities well grounded in the history and reason of the period were included in section 1983, where that inclusion did not conflict with the intent of section 1983. *See, e.g., Imbler v. Pachtman,* 424 US 409, 96 S Ct 984, 47 L Ed 2d 128 (1976) (prosecutors' immunity from a section 1983 suit); *Pierson v. Ray,* 386 US 547, 87 S Ct 1213, 18 L Ed 2d 288 (1967) (judges and police officers); *Tenney v. Brandhove,* 341 US 367, 71 S Ct 783, 95 L Ed 1019 (1951) (legislators). Subsequent changes in the common law can have an effect on section 1983 only to the extent that they comport with the original intent of Congress

---

[7] The Supreme Court has recognized that while the question in the present type of cases is a question of pre-emption, it is pre-emption with a special twist:

"The defects Congress perceived in state courts lay in their jury factfinding processes, which of course were skewed by local prejudices, *see Patsy v. Board of Regents of Florida,* 457 U.S. 496, 506 (1982), and not in their otherwise neutral rules of procedure. The fact that Congress saw no need to alter these neutral procedural rules in no way suggests that all *future* state court procedures, including exhaustion requirements that were unheard of at the time of section 1983's enactment and which apply only to injuries inflicted by the very targets of that statute, would similarly be consistent with the purposes and intent of the federal civil rights laws." *Felder v. Casey,* 487 US \_\_\_\_, \_\_\_\_ n 4, 108 S Ct 2302, 2311 n 4, 101 L Ed 2d 123 (1988) (emphasis in original).

in 1871. *Smith v. Wade,* 461 US 30, 34 & n 2, 103 S Ct 1625, 75 L Ed 2d 632 (1983).

Section 1983 is derived from Section 1 of the Civil Rights Act of April 20, 1871. 17 Stat 13. The Act was an exercise of Congressional power under section 5 of the Fourteenth Amendment to enforce the provisions of that amendment.[8] *Monroe v. Pape,* 365 US 167, 171, 81 S Ct 473, 5 L Ed 2d 492, 496 (1961). It was intended to create "a species of tort liability in favor of federally secured rights." *Smith v. Wade, supra,* 461 US at 34. There is no question that Congress meant section 1983 to override incompatible state law in order to enforce citizens' rights against the abusive practices of persons and groups depriving any person of any rights, privileges or immunities secured by the Constitution of the United States.

In *Monroe v. Pape,* the Supreme Court identified three purposes for the legislation. Among these the Court clearly included a Congressional intent to override any state law which conflicted with the remedies available under section 1983.

> "*First,* it might, of course, override certain kinds of state law. [These were laws by the states] 'against the rights or privileges of citizens of the United States.' * * * *Second,* it provided a remedy where state law was inadequate. * * * The *third* aim was to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice." 365 US at 173-74 (footnotes omitted; emphasis in original).

The question remains, do the provisions limiting compensatory and punitive damages in the OTCA conflict with remedies available under section 1983 to the extent that the OTCA undermines the goal of section 1983 for full compensation?

1. *The limits on compensatory damages.*

The purposes described in *Monroe* have guided the

---

[8] Section 5 of the Fourteenth Amendment to the United States Constitution provides:

"The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

Court when it has addressed the question of what compensatory damages are available in a section 1983 action. "[T]he basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus,* 435 US 247, 254, 98 S Ct 1042, 55 L Ed 2d 252, 259 (1978).

In *Carey v. Piphus,* the Court discussed the principle of compensation which serves as the foundation for damages under section 1983, and noted that the purpose of compensation must shape section 1983 analyses, including any discussion of what damages should be available to a plaintiff:

> "These rules [of common-law tort damages], defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry [as to what damages are available] under § 1983 as well.
>
> "It is not clear, however, that common-law tort rules of damages will provide a complete solution to the damages issue in every § 1983 case. In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right. In such cases, it may be appropriate to apply the tort rules of damages directly to the § 1983 action. In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law of torts. In those cases, the task will be the more difficult one of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right.
>
> "Although this task of adaptation will be one of some delicacy — as this case demonstrates — it must be undertaken. The purpose of § 1983 would be defeated if injuries caused by the deprivation of constitutional rights went uncompensated simply because the common law does not recognize an analogous cause of action. In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question — just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law." 435 US 257-59 (citations omitted).

Based on this analysis, the Court concluded that section 1983 encompassed nominal damages for a constitutional deprivation of due process, stating:

"Common-law courts traditionally have vindicated deprivations of certain 'absolute' rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights." *Id.* at 266 (footnote omitted).

If common-law damages as mentioned by the Court in *Carey* serve as a starting point to determine what damages are recoverable under section 1983,[9] we conclude that a section 1983 action brought in an Oregon court must, at minimum, allow for common-law damages unfettered by other limitations. That is, state statutes such as the OTCA which provide for section 1983 claims may provide different remedies for tortious conduct encompassed within a section 1983 claim, but they cannot limit the federal claim or alter the law to provide less than the common law would for such a claim. No matter how the OTCA alters claims brought under the OTCA for tortious conduct also encompassed within section 1983, it cannot affect the rights created by Congress under section 1983.

In *Owen v. City of Independence,* 445 US 622, 100 S Ct 1398, 63 L Ed 2d 673 (1980), the Supreme Court said:

"Municipal defenses — including an assertion of sovereign immunity — to a federal right of action are, of course, controlled by federal law. * * * *'Conduct* by persons acting under color of state law *which is wrongful under 42 USC § 1983* or § 1985(3) *cannot be immunized by state law.* A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced'." 445 US at 647 n 30 (quoting then Circuit Judge Stevens in *Hampton v. Chicago,* 484 F2d 602, 607 (7th Cir 1973)) (emphasis added).

[9] We refer to damages accepted as part of the common law in 1871 and subsequent changes in the common-law which serve the intent of Congress in passing section 1983, *see Smith v. Wade,* 461 US 30, 34 n 2, 103 S Ct 1625, 75 L Ed 2d 632 (1983).

A state statute which puts a cap on compensatory damages and grants immunity for damages in excess of that limitation impermissibly grants partial immunity to persons acting under color of law for wrongful conduct under section 1983. We therefore conclude that the OTCA's immunization of the officers from liability in excess of $100,000 is invalid when that limitation is applied to section 1983 claims.

■ The Court has held before, *see Martinez v. California,* 444 US 277, 284 n 9, 100 S Ct 553, 62 L Ed 2d 481 (1980), and has recently restated its position that:

> "a state law that immunizes government conduct otherwise subject to suit under § 1983 is pre-empted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy * * *." *Felder v. Casey,* 487 US ___, 108 S Ct 2302, 2307, 101 L Ed 2d 123 (1988).

A state cannot limit the amount a plaintiff can recover in a section 1983 action, just as it cannot require that the plaintiff first submit his claims to the government. All such limitations on the rights of plaintiffs under section 1983 are "patently incompatible with the compensatory goals of the federal legislation." 487 US at ___, 108 S Ct at 2309, 101 L Ed 2d at 134.

### 2. The elimination of punitive damages.

■ "Section 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well." *Owen v. City of Independence, supra,* 445 US at 651. *See also Newport v. Fact Concerts, Inc.,* 453 US 247, 269-70, 101 S Ct 2748, 69 L Ed 2d 616 (1981). The Court held in *Smith v. Wade* that punitive damages are available in a proper section 1983 action, stating: "We discern no reason why a person whose federally guaranteed rights have been violated should be granted a more restrictive remedy than a person asserting an ordinary tort claim cause of action." 461 US at 48-49. Punitive damages for conduct as alleged by the plaintiff in his complaint were in 1871 and are now available under the common law applied by most state and federal courts,[10] and in Oregon. *See, e.g., Klinicki v. Lundgren,* 298 Or 662, 695 P2d 906 (1985);

---

[10] In the latter part of the last century punitive damages were "accepted as settled law by nearly all state and federal courts." *Smith v. Wade, supra* n 9 at 35.

*Day v. Holland,* 15 Or 464, 15 P 855 (1887). Just as the state cannot put a cap on compensatory damages against an individual in a section 1983 action, it likewise may not categorically eliminate punitive damages which are now and have been recoverable in appropriate cases. The Court of Appeals erred in its conclusion that the terms of the OTCA could preclude a punitive damages claim when the section 1983 action is brought in state court.

B. *Subjecting a federal claim to state limits on procedural grounds.*

In their brief before this court, defendants take a slightly different tack than did the Court of Appeals. Defendants argue that, while they do not disagree with the result reached by the Court of Appeals, that opinion did not go far enough. The Court of Appeals acknowledged that Congress could have decided to pre-empt state law, but then concluded that Congress did not do so. Defendants argue that Congress lacks the authority to dictate the procedures and the jurisdiction of state courts because of the restrictions of the Tenth Amendment.[11]

Defendants' argument suggests that Oregon courts need not accept section 1983 claims. Under this view, Oregon courts could hear section 1983 cases only because of, and subject to, the limitations of the OTCA. The implication would be that plaintiff could bring different actions in Oregon state or federal district courts. For example, in Oregon federal district courts a section 1983 action could seek unlimited compensatory and punitive damages against individuals but could not seek any damages under *respondeat superior.* On the other hand, if the OTCA were the source of state court jurisdiction

---

[11] The Tenth Amendment to the United States Constitution provides:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

The Civil Rights Act of 1871 was passed to enforce the Fourteenth Amendment, which was itself adopted after the Tenth Amendment. During the debate on the Act, members of Congress, including some who must have been familiar with the rationale behind the language of the recently approved Fourteenth Amendment, pointed out that the Act "overrides the reserved powers of the States." *Monroe v. Pape,* 365 US 167, 174, 81 S Ct 473, 5 L Ed 2d 492, 498 (1961) (quoting the House debate). The Supreme Court has noted that one of the purposes of section 1983 was to override certain state laws. *Id.* at 173.

over section 1983, an Oregon plaintiff could seek compensatory damages against an individual officer and allege *respondeat superior* liability of the public body which employed the officer, but only up to the limit of $100,000. Defendants' theory is incorrect, however, for two reasons: (1) We have already shown that section 1983 overrides the OTCA where there is a conflict; and (2) the OTCA did not create state court jurisdiction over section 1983 claims and cannot modify that jurisdiction.

Because it has never been asked so to rule, the United States Supreme Court has never held that a state court must hear a claim based on a violation of section 1983, but it has given several signals how the question should be resolved. For example, in *Martinez v. California, supra,* 444 US at 283 n 7, the court noted "that where the same type of claim, if arising under state law, would be enforced in the state courts, the state courts are generally not free to refuse enforcement of the federal claim. *Testa v. Katt,* 330 US 386, 394, 67 S Ct 810, 91 L Ed 967 (1947)."

In *Testa v. Katt,* 330 US 386, 67 S Ct 810, 91 L Ed 967 (1947), the question before the Court was whether Rhode Island had to accept a case arising under the federal Emergency Price Control Act. The Rhode Island court refused, arguing that the law was a "penal" statute from a foreign jurisdiction which precedent said the state need not enforce. The Supreme Court reversed, setting forth the standard of "the same type of claim" mentioned in *Martinez.* The *Testa* court held that the supremacy clause of the United States Constitution required that a state not regard federal laws as the equivalent of laws passed by a foreign jurisdiction. Similarly, the supremacy clause refuted the argument that a state need not enforce a federal law because that law was contrary to the policy of the state: Under the supremacy clause, laws passed by Congress become a part of the policy of every state. The Court concluded:

> "It is conceded that this same type of claim arising under Rhode Island law would be enforced by that State's courts. * * * Thus the Rhode Island courts have jurisdiction adequate and appropriate under established local law to adjudicate this action. Under these circumstances the State courts are not free to refuse enforcement of petitioners' claim. * * *" 330 US at 394.

Some courts have attempted to avoid the *Testa.* requirements in section 1983 actions by suggesting that the limits which they seek to impose are not limits on the claim but instead are procedural limits or, as defendants suggest, jurisdictional limits on actions in state court. For example, in *Felder v. Casey,* 139 Wis 2d 614, 408 NW2d 19 (1987), *reversed and remanded* 487 US ____, 108 S Ct 2302, 101 L Ed 2d 123 (1988), the Wisconsin court, in a 4-to-3 decision, held that the notice of claim provisions of the state tort claims act could be applied to section 1983 actions brought in state court. The Wisconsin court concluded that the notice of claim regulations were within constitutional limits because they were procedural limits on the state courts by which plaintiffs must choose to be bound if plaintiffs seek relief in state court. 139 Wis 2d at 623, 408 NW2d at 23.

The Supreme Court disagreed. In deciding that Wisconsin's notice of claim statute cannot be applied to section 1983 actions, the Court followed the same reasoning and reached the same conclusions that we have reached in the present case. It held that the question was whether Congress, in passing the Civil Rights Act of 1871, intended that a state later would be able to impose some limits on the federal claim. *Felder v. Casey, supra,* 487 US at ____, 108 S Ct at 2312, 101 L Ed 2d 145. The majority in *Felder* held that, even though the notice of claim requirement was characterized by the Wisconsin court as procedural, it had the effect of limiting the rights granted by Congress and created an inconsistency between actions brought in state and federal courts. The Supreme Court held that both the reduction of rights and the inconsistency between state and federal court actions violated the United States Constitution. Thus, Wisconsin's notice of claim provisions could not be applied to section 1983 actions brought in state court.

In reaching this conclusion, the Supreme Court did not directly address the question before us, *viz.,* whether a state statute can limit the amount of recovery afforded a plaintiff by section 1983. The Court did, however, note the inconsistency between the Wisconsin court's decision in *Felder,* and its earlier decision in *Thompson v. Village of Hales Corners,* 115 Wis 2d 289, 340 NW2d 704 (1983), which held that the Wisconsin tort claims act could not limit the amount of recovery available in a section 1983 claim. We conclude

explicitly what the Supreme Court implied — that the supremacy clause of the United States Constitution requires that the OTCA cannot limit the amount of recovery in an action brought in state court under section 1983.

As the Supreme Court did in *Felder,* we find that the reasoning of the Court in *Wilson v. Garcia,* 471 US 261, 105 S Ct 1938, 85 L Ed 2d 254 (1985), is applicable to the present case. In *Wilson,* the Court was faced with the question of what state statute of limitations should apply to a section 1983 case. The Court stated:

> "The language of § 1988,[12] directs the courts to follow a 'three-step process' in determining the rules of decision applicable to civil rights claims:
>
>> 'First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." [42 USC § 1988.] If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum state. Ibid. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States." Ibid.' Burnett v. Grattan, 468 US 42, 47-48, 104 S Ct 2924, 82 L Ed 2d 36 (1984)." *Id.* at 268.

Having determined that there was no applicable federal law, the Court decided that it must select from among several possible state statutes. The proper selection was dictated by the original intent of section 1983. The Court determined that the intent of Congress in passing section 1983 was to create a uniform application of the law across the states, to make certain that federal claims were not distinguished and discriminated against because they were federal claims, and to give section 1983 as broad a sweep as possible.[13] These inten-

---

[12] The Court relied on the language of section 1988 in this case because section 1988 sets forth the jurisdiction of federal courts hearing section 1983 claims. See note 4, *ante.*

[13] The Court has reaffirmed this position in its most recent decision on the subject of section 1983:

> "Section 1983 creates a species of liability in favor of persons deprived of their federal civil rights by those wielding state authority. As we have repeatedly emphasized, 'the central objective of the Reconstruction-Era civil rights statutes

tions dictated that the proper statute of limitations to apply to section 1983 actions was the statute of limitations for personal injuries, rather than the more limited statute of the state tort claims act. Although *Wilson* concerned a statute of limitations issue, the logic of the opinion should dictate that the OTCA cannot limit the amount of damages claimed in a section 1983 state action.

A contrary holding would create a distinction between a section 1983 claim in state or federal courts. Such a distinction may itself be a violation of the supremacy clause of the United States Constitution. In *Maine v. Thiboutot,* 448 US 1, 100 S Ct 2502, 65 L Ed 2d 555 (1980), the Court was faced with an argument that federal law which applied to section 1983 cases in federal court need not be applied in state court. The Court rejected this claim on constitutional grounds. If the same claim results in less recovery, so that the same remedy is "not available in state courts, federalism concerns would be raised because most plaintiffs would have no choice but to bring their complaints concerning state actions to federal courts." *Id.* at 11 n 12.

In *Felder v. Casey,* the Court repeated and clarified its conclusion that a state law which creates the potential for different outcomes in state and federal courts cannot be given effect. After recognizing that the proponents of Wisconsin's notice of claim statute argued that the federal constitution preserved the states' rights to control their own courts, so that one who chooses to bring a federal action in state court must accept the state's limitations, the Court held that this argument

> "has no place under our Supremacy Clause analysis. * * * In a State that demands compliance with such a statute before a § 1983 action may be brought or maintained in its courts, the outcome of federal civil rights litigation will frequently and predictably depend on whether it is brought in state or federal court. Thus, the very notions of federalism upon which

---

... is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief.' *Burnett v. Grattan,* 468 U.S. 42, 55 (1984). Thus section 1983 provides 'a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation.' *Mitchum v. Foster,* 407 U.S. 225, 239 (1972), and is to be accorded 'a sweep as broad as its language.' *United States v. Price,* 383 U.S.,787, 801 (1966)." *Felder v. Casey, supra* n 7, 487 US at ____, 108 S Ct at 2307, 101 L Ed 2d at 138.

respondents rely dictate that the State's outcome-determinative law must give way when a party asserts a federal right in state court." 487 US at ___, 108 S Ct at 2313, 101 L Ed 2d 145-46.

This court has already dealt with the question of how Oregon courts must respond when confronted with a conflict between Oregon procedure and the enforcement of federal law in a state court. In *Hust v. Moore-McCormick Lines, Inc.,* 180 Or 409, 177 P2d 429 (1947), the question arose in an action under the federal Merchant Marine Act of 1920 (46 USC §§ 861-889 (1982)) brought in state court. Because the defendant claimed that the plaintiff had received an excessive judgment, this court was confronted with a conflict between Oregon's procedural rules and the provisions of the federal act. This court determined that a decision to follow state procedural rules would affect the substantive rights of the plaintiff in a manner prohibited by federal law. *Id.* at 425-26.

■ Whether characterized as a part of the traditional limitation which holds that the courts of one state cannot alter the substantive rights afforded by another jurisdiction even when an action is brought outside that jurisdiction, or, as we here recognize, that the United States Constitution prohibits limitations of federal rights in a state court, the result is the same: Neither the Oregon legislature nor the Oregon courts can limit the rights that a plaintiff has in a federal claim, even when that federal claim is brought in state court.

The Court of Appeals concluded that neither section 1983 nor the cases construing it establish pre-emption of the Oregon statutory direction that its courts not award compensatory damages in excess of the OTCA limits or punitive damages not recoverable under the OTCA. The Court of Appeals relied on its previous decision in *Nelson v. Lane County,* 79 Or App 753, 720 P2d 1291 (1986), *aff'd on other grounds* 304 Or 97, 743 P2d 692 (1987), in reaching that conclusion. In *Nelson,* the Court of Appeals commented:

"In our view, it would be circular to conclude that section 1983 requires a state's courts to award punitive damages when the state's law prohibits punitive damages for that tort and when the reason for ascribing the intent to Congress to allow the recovery of punitive damages [or unlimited compensatory damages in the case now before us] is that they are recoverable

for comparable torts under case law that comes largely from the states. * * *" 79 Or App at 766.

The Court of Appeals' analysis would be correct if it were based on an accurate assumption. Unfortunately, the majority opinion in *Nelson* scrambles the legal eggs. It ignores the fundamental fact that this state's common law does not prohibit punitive damages and does not limit compensatory damages. These limits come only from the special legislative act of the OTCA, which does not represent the common law of this state.

In sum, Oregon courts must hear section 1983 claims without limits on compensatory or punitive damages. The language of the OTCA allows claims not available under section 1983, but it does not, because it cannot, limit liability under section 1983.

## II. THE *RESPONDEAT SUPERIOR* CLAIM AGAINST MULTNOMAH COUNTY

In *Monell v. New York City*, 936 US 658, 98 S Ct 2018, 56 L Ed 2d 611 (1978), the Supreme Court concluded that a local government may not be sued under section 1983 for an injury inflicted solely by its employes or agents. Instead, when a local government's "edicts or acts may fairly be said to represent official policy, * * * the government * * * is responsible under § 1983," *id.* at 694, but "a municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory," *id.* at 691. *Monell* disposes of any section 1983 claims against Multnomah County, because plaintiff's allegations are based solely on the conduct of the officers and not on any conduct enforcing municipal custom or policy.

The distinctions between section 1983 and the OTCA are illustrated by the fact that, despite the absence of a section 1983 claim against Multnomah County, the County may still be a party to plaintiff's suit. Multnomah County may be sued for the conduct of the officers under the OTCA up to $100,000 if the officers caused injury during the scope of their employment, and it may defend the officers as provided in ORS 30.285.

## CONCLUSION

This brings us to the disposition of this case. Plaintiff has stated facts sufficient to make out a claim against the officers for assault under (1) common law without limitation on damages to the extent the officers acted outside the scope of their employment, (2) section 1983 without limitation on damages and with attorney fees, and (3) the OTCA with limitation on damages, to the extent the officers acted within the scope of their duties. While these claims are roughly parallel, they do not entirely overlap.

Because of our decision in this case, plaintiff may pursue all three claims against the officers individually. Plaintiff may proceed against Multnomah County only under the limits of the OTCA and not under section 1983. Of course, plaintiff must still prove by a preponderance of the evidence that there is liability under any one or more of these claims, and the extent, if any, of his damages.

The decision of the Court of Appeals and the judgment of the circuit court are reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.