**S.V., Plaintiff,**

v.

**SHERWOOD SCHOOL DISTRICT, Defendant.**

Civil No. 99–1109–JO.

United States District Court, D. Oregon.

Dec. 27, 1999.

Mary E. Broadhurst, Eugene, OR, Jerry C. Goodman, Jerry C. Goodman, P.C., Eugene, OR, for Plaintiff.

Richard G. Cohn–Lee, Hungerford Law Firm, West Linn, OR, for Defendant.

## OPINION AND ORDER

ROBERT E. JONES, District Judge.

Plaintiff S.V. appeals a declaratory decision of a hearings officer in a due process

hearing under the Individuals With Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"). This court has jurisdiction over the appeal pursuant to 20 U.S.C. § 1415(e)(2)(1991) and 20 U.S.C. § 1415(i)(2)(1997).[1]

I have considered the parties' arguments and written submissions and have reviewed case law from other jurisdictions on the issue presented. Although the answer is by no means clear, for the reasons stated below I conclude the hearings officer erred. Accordingly, the hearings officer's decision is reversed, and this matter is remanded for further administrative proceedings.

## PROCEEDINGS BELOW

In the underlying administrative case, plaintiff alleged that defendant Sherwood School District failed to provide S.V. with the free appropriate public education the IDEA mandates, and that because of that failure, plaintiff's parents incurred tuition expenses in providing an appropriate alternate placement. Plaintiff sought reimbursement of those expenses, including expenses incurred more than two years before plaintiff initiated the IDEA action.[2]

In advance of the administrative hearing on plaintiff's claim, plaintiff sought a declaratory ruling by the hearings officer that the statute of limitations applicable to the reimbursement claim is the six year limitation period for "action[s] upon a liability created by statute." O.R.S. 12.080(2). Relying primarily on prior rulings by Oregon hearings officers in IDEA cases, defendant, in turn, contended that the Oregon Tort Claims Act ("OTCA") two year limitations period, O.R.S. 30.275(8), should apply. In a written opinion, the hearings officer adhered to the prior Oregon administrative decisions and ruled that O.R.S. 30.275(8) applied. It is that ruling that plaintiff now appeals.

## DISCUSSION

The issue in this case—which Oregon statute of limitations should apply to an action for tuition reimbursement under the IDEA—appears to be one of first impression in this court. Because Congress failed to specify a limitations period for IDEA claims, I must look to the state statute of limitations applicable to the most analogous state cause of action, and apply that statute of limitations "unless it conflicts with underlying federal policies." *Dreher v. Amphitheater Unified School Dist.*, 22 F.3d 228, 232 (9th Cir.1994); *see also Wilson v. Garcia*, 471 U.S. 261, 268–70, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

In *Wilson*, the Supreme Court explained that when selecting the most analogous state statute of limitations to apply to a federal statutory claim, the court must first consider whether state or federal law governs the characterization of the claim for statute of limitations purposes. If federal law applies, the court must next decide whether all claims under the statute "should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case." *Wilson*, 471 U.S. at 268, 105 S.Ct. 1938; *see also Dreher*, 22 F.3d at 232. Finally, the court must "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." *Wilson*, 471 U.S. at 268–69, 105 S.Ct. 1938; *Dreher*, 22 F.3d at 232.

Consistent with the guiding principles set forth in *Wilson* and *Dreher*, I first consider whether federal law or state law governs characterization of plaintiff's claim for statute of limitations purposes. The parties have not focused on this issue, possibly because there is little question that federal law governs.

1. The IDEA was completely revised and amended in 1997, Pub.L. 105–17, 111 Stat. 37 (June 4, 1997). Citations to the IDEA throughout this opinion will be to the 1997 version.

2. S.V. currently attends a program provided by the defendant school district, and it appears that S.V.'s parents initiated the IDEA action solely to obtain tuition reimbursement, not to challenge that placement. *See* Plaintiff's Brief in Support of Appeal, pp. 1–2.

The IDEA requires States, as a condition of federal financial assistance, "to ensure a 'free appropriate public education' for all disabled children within their jurisdictions." *Honig v. Doe*, 484 U.S. 305, 308, 108 S.Ct. 592 (1988). When Congress passed the Education of the Handicapped Act ("EHA") in 1975,[3] Congress

> had before it ample evidence that such legislative assurances were sorely needed: 21 years after this Court declared education to be "perhaps the most important function of state and local governments," * * * congressional studies revealed that better than half of the Nation's 8 million disabled children were not receiving appropriate educational services.

*Honig*, 484 U.S. at 309, 108 S.Ct. 592 (citations omitted). In responding to the States' educational failings, "Congress did not content itself with passage of a simple funding statute." *Honig*, 484 U.S. at 310, 108 S.Ct. 592. Instead,

> EHA confers upon disabled students an enforceable substantive right to public education in participating States * * * and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act.

*Honig*, 484 U.S. at 310, 108 S.Ct. 592 (citation omitted). In a footnote, the *Honig* Court commented that

> Congress' earlier efforts to ensure that disabled students received adequate public education had failed in part because the measures it adopted were largely hortatory. * * * Neither [of Congress' two earlier enactments, in 1966 and 1970], however, provided specific guidance as to how States were to use the funds, nor did they condition the availability of the grants on compliance with any procedural or substantive safeguards. In amending the EHA to its present form, Congress rejected its earlier policy of "merely establish[ing] an unenforceable goal requiring all children to be in school."

*Honig*, 484 U.S. at 310 n. 1, 108 S.Ct. 592 (citations omitted).

Thus, the IDEA "creates a *federal regime*"[4] and federal law governs the characterization of plaintiff's claim for statute of limitations purposes.

I next consider whether all claims under the IDEA must be characterized in the same way, or whether they should be evaluated differently. *Dreher*, 22 F.3d at 232. A review of the relevant case law compels a conclusion that many different types of claims may arise under the IDEA, and that each claim must be evaluated according to the varying factual circumstances and legal theories presented in each individual case. *See Dreher*, 22 F.3d at 232 and 232 n. 7; *see, e.g., Janzen v. Knox County Bd. of Educ.*, 790 F.2d 484, 487 (6th Cir.1986)("selection of state limitations periods on a case-by-case basis [is] imperative"); *see also Zipperer v. School Bd. of Seminole County, Fla.*, 111 F.3d 847, 851 (11th Cir.1997)(IDEA provides two distinguishable causes of action, substantive appeals from final agency decisions and actions for attorney fees).

Many different claims potentially arise under the IDEA, including challenges to the propriety of a disabled student's individualized education program ("IEP"), which is "[t]he *modus operandi*" of the IDEA,[5] claims seeking placement in a private rather than public school,[6] claims for

---

**3.** Pub.L. 101–476, § 901(a)(1)(1990) amended 20 U.S.C. § 1400(a) to substitute "Individuals with Disabilities Education Act" for "Education of the Handicapped Act."

**4.** *See City of Chicago v. Intern. College of Surgeons*, 522 U.S. 156, 118 S.Ct. 523, 536 n. 4 (1997)(Ginsburg and Stevens, JJ., dissenting; addressing federal court supplemental jurisdiction to review state administrative decisions)(emphasis in original).

**5.** *School Committee of Town of Burlington, Mass. v. Dept. of Educ.*, 471 U.S. 359, 368 (1985); *see also Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 247–48 (3rd Cir.1999)(challenge to, among other things, student's IEP).

**6.** *See Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d at 248.

tuition reimbursement and compensatory education, and actions for attorney fees. *See generally Zipperer*, 111 F.3d 847. IDEA claims in federal court may be brought as appeals from final agency rulings, as actions for attorney fees, and in circumstances where exhaustion of administrative remedies would be futile or inadequate, as original claims. *See Doe by and Through Brockhuis v. Arizona Dept. of Educ.*, 111 F.3d 678, 682–84 (9th Cir. 1997)(no exhaustion required for "systemic" claims challenging IDEA procedures or the educational system as a whole); *Honig, supra*, 484 U.S. at 326–27, 108 S.Ct. 592 ("parents may bypass the administrative process where exhaustion would be futile or inadequate").

I conclude, as did the Sixth Circuit in *Janzen v. Knox County Bd. of Educ., supra*, that "the nature of actions that can be brought under this Act as well as the Act's goal of proper education of the handicapped child make the selection of state limitations periods on a case-by-case basis an imperative." 790 F.2d at 487.

Next, I must characterize the "essence" of plaintiff's claim to determine which state statute of limitations provides the most appropriate limiting principle. *Dreher*, 22 F.3d at 232. Plaintiff's sole claim in this case is for tuition reimbursement. In urging the court to adopt the six year limitation period for actions "upon a liability created by statute," O.R.S. 12.080(2), as the most analogous, plaintiff reasons that the IDEA governs both the substantive and procedural aspects of all matters within its scope, and that "[o]ne must look no further than the IDEA to determine a claimant's rights, and for the source of the claimant's power to vindicate those rights." Plaintiff's Brief in Support of Appeal, p. 11.

Defendant, in turn, defends the hearings officer's selection of the two year OTCA limitations period primarily on the ground that the challenged decision is consistent with prior Oregon administrative decisions in IDEA cases. Defendant characterizes plaintiff's tuition reimbursement claim as "akin" to a federal civil rights action under 42 U.S.C. § 1983, and contends that the closest analogue is the OTCA, which makes public bodies liable for "torts" committed against members of the general public. Defendant's Response, p. 3.

The court has struggled to discern the "essence" of plaintiff's claim in an attempt to identify an analogous state law claim. This effort has convinced me that plaintiff's claim is not comparable to any state law action and arises solely from the mandates embodied in the IDEA.

The IDEA provides that aggrieved parties may seek relief in federal court. 20 U.S.C. § 1415(i)(2)(A). The court may award "such relief as [it] determines is appropriate." 20 U.S.C. § 1415(i)(B). In *Burlington*, the Supreme Court explained that the IDEA confers broad discretion on the court to fashion relief, provided the relief is "appropriate" in light of the purposes of the IDEA. *Burlington*, 471 U.S. at 369, 105 S.Ct. 1996. The Court described the principle purpose of the IDEA as follows:

> [T]o provide handicapped children with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." The [IDEA] contemplates that such education will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as nonhandicapped children, but the [IDEA] also provides for placement in private schools at public expense where this is not possible.

*Burlington*, 471 U.S. at 369, 105 S.Ct. 1996 (citations omitted). In light of the purpose to ensure free education for disabled children, the *Burlington* Court held that by empowering the court to grant "appropriate" relief, "Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." 471 U.S. at 370, 105 S.Ct. 1996. The Court clarified that tuition reimbursement is not "damages"; rather, reimbursement merely

requires the school district to "belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP." *Burlington,* 471 U.S. at 370–71, 105 S.Ct. 1996; *see also Miener By and Through Miener v. State of Mo.,* 800 F.2d 749, 753 (8th Cir.1986)(*Burlington* "altered our understanding of what 'damages'. includes in the context of the [IDEA]").

The rationale of *Burlington* has been extended to claims for compensatory education services. *See, e.g., Miener,* 800 F.2d at 753; *see also Parents of Student W v. Puyallup School Dist. 3,* 31 F.3d 1489, 1497 (9th Cir.1994). Compensatory education, like retroactive tuition reimbursement, requires the school district "to belatedly pay expenses that it should have paid all along * * *." *Burlington,* 471 U.S. at 370–71, 105 S.Ct. 1996. Unlike tuition reimbursement, however, compensatory education is a prospective remedy that allows a disabled student to continue education beyond age 21 "in order to make up for the earlier deprivation of a free appropriate public education." *Ridgewood,* 172 F.3d at 249; *see also Parents of Student W,* 31 F.3d at 1497; *Carlisle Area School v. Scott P.,* 62 F.3d 520, 536–38 (3rd Cir. 1995); *Lester H. by Octavia P. v. Gilhool,* 916 F.2d 865, 873 (3rd Cir.1990).

Both claims, tuition reimbursement and compensatory education, are equitable remedies similarly intended to secure a disabled student's right to a "free appropriate public education." *Pihl v. Massachusetts Dept. of Educ.,* 9 F.3d 184, 188 (1st Cir.1993). Neither remedy results in an award of "damages," *Miener,* 800 F.2d at 753, and neither claim appropriately is characterized as tort-based. *See Murphy v. Timberlane Regional School Dist.,* 22 F.3d 1186, 1192 n. 8 (1st Cir.1994). Moreover, as Justice Thomas commented in his dissenting opinion in *Olmstead v. L.C.,* 527 U.S. 581, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999),[7]

> *IDEA is not an antidiscrimination law.* It is a grant program that affirmatively requires States accepting federal funds to provide disabled children with a "free appropriate public education" and to establish "procedures to assure that, to the maximum extent appropriate, children with disabilities * * * are educated with children who are not disabled."

527 U.S. at —— n. 6, 119 S.Ct. at 2198 n. 6 (emphasis added; citation omitted).

As Justice Thomas' comments reflect, Congress enacted the IDEA under its spending power, not under § 5 of the Fourteenth Amendment. *Bradley v. Arkansas Dept. of Educ.,* 189 F.3d 745, 751 (8th Cir.1999).[8] In doing so, Congress made several specific findings but, significantly, "did not find that the disparate treatment of students with disabilities resulted from action by the states or, if it did, that such state action violated the Equal Protection Clause." *Bradley,* 189 F.3d at 752. Instead, Congress passed a federal spending program, albeit one that confers upon disabled students an enforceable right to public education in participating states. *Honig, supra,* 484 U.S. at 310, 108 S.Ct. 592.

In *Pennhurst State Sch. and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531 (1981), the Supreme Court explained that in exercising its power to legislate under the spending power, Congress may fix the terms on which it will disburse federal

---

**7.** *Olmstead* addressed the appropriateness of institutionalizing persons with mental disabilities under Title II of the Americans With Disabilities Act, and held that unjustified isolation may properly be regarded as discrimination based upon disability. 527 U.S. at ——, 119 S.Ct. at 2185.

**8.** *Bradley v. Arkansas Dept. of Educ.,* 189 F.3d 745 (8th Cir.1999), involved an 11th Amendment challenge to federal court jurisdiction over unwilling states in IDEA cases. The *Bradley* court held that Arkansas waived its immunity through participation in the IDEA, a spending program. 189 F.3d at 753. Defendant has not asserted a similar challenge in this case, and I accept the *Bradley* court's analysis for purposes of this appeal.

money to participating States. 451 U.S. at 17, 101 S.Ct. 1531. Moreover,

> Unlike legislation enacted under § 5, however, legislation enacted pursuant to the spending power *is much in the nature of a contract:* in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract."

451 U.S. at 17, 101 S.Ct. 1531 (emphasis added).

I am, of course, called upon only to determine the statute of limitations for plaintiff's tuition reimbursement claim, and have considered compensatory education claims merely as part of my effort to discern the "essence" of plaintiff's claim. I am satisfied that plaintiff's claim is not a tort claim and is not "akin" to a civil rights claim. Consequently, I reject the premise on which defendant's argument in favor of the OTCA two year limitations period rests.[9] Moreover, I am persuaded that plaintiff's tuition reimbursement claim finds no analogue in the personal injury or tort-based actions subject to the general Oregon two-year statute of limitations set forth in 12.110, or, for that matter, in any claim subject to the other specific statutes of limitations set forth in O.R.S. Chapter 12. I also agree with plaintiff that S.V.'s rights derive entirely from the IDEA and Oregon's participation, by acceptance of federal funds, in that spending program. Consequently, I find that the most appropriate limitations period to apply to plaintiff's tuition reimbursement claim is the six-year period for "action[s] upon a liability created by statute," O.R.S. 12.080(2).

In so finding, I recognize, as did the Ninth Circuit in *Dreher*, that other courts have come to inconsistent conclusions, an "inconsistency probably attributable to the fact-based analysis and the variety of state causes of action to evaluate." *Dreher*, 22 F.3d at 231 n. 4. No purpose would be served by discussing those cases here because, as stated, this is an issue of first impression in this court and concerns Oregon law. Consequently, cases addressing other state statutes of limitations, although interesting, are not persuasive.

I now turn to the question of whether a six-year limitations period in this case is consistent with federal policies. I conclude that it is. In *Dreher*, the Ninth Circuit recognized that although as a general matter, Congress desired IDEA reviews to "be quick in order to keep pace with the changing educational needs of school children," that policy does not apply to claims for retroactive tuition reimbursement because a student's "education is not threatened." *Dreher*, 22 F.3d at 232.

Defendant contends, however, that federal policy requires swift resolution of educational disputes, even where, as here, the claim is "for wholly past tuition reimbursement." Defendant's Response, pp. 6–7. By way of explanation, however, defendant points not to federal policy considerations, but instead to financial concerns of particular importance only to defendant itself. Specifically, defendant argues that its interest in the finality of educational disputes entitles it to "know in a reasonable time" whether it will be subject to IDEA liability, that a six year limitation period would result in an impossible evidentiary burden, and that archival law requires it to retain documents only for five years. *See* Defendant's Response, p. 7.

It may be that a six year limitation period imposes some financial uncertainty on defendant, but I am not persuaded that the additional burden, if any, is inconsistent with federal policy. Indeed, in *Flor-*

---

9. I note that in *Rogers v. Saylor*, 306 Or. 267, 285, 760 P.2d 232 (1988), the Oregon Supreme Court held that civil rights claims under 42 U.S.C. § 1983 are not subject to the OTCA limitations on compensatory or punitive damages. In *Sanok v. Grimes*, 306 Or. 259, 262, 760 P.2d 228 (1988), the Oregon Supreme Court further held that the OTCA notice of claim requirement does not apply to claims under section 1983.

*ence County School Dist. Four v. Carter,* 510 U.S. 7, 114 S.Ct. 361 (1993), the Court rejected a similar school district "burden" argument. In *Florence,* the Court held that tuition reimbursement for a private placement made by the parents of a disabled student is not barred merely because the private school is not on the state's approved list of private schools. In rejecting the school district's argument that requiring parents to choose a state approved private school was the only meaningful way to allow states to control education costs, Justice O'Connor wrote:

> The school district also claims that allowing reimbursement for parents such as Shannon's puts an unreasonable burden on financially strapped local educational authorities. * * *

> There is no doubt that Congress has imposed a significant financial burden on States and school districts that participate in IDEA. Yet public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice. This is IDEA's mandate, and school officials who conform to it need not worry about reimbursement claims.

510 U.S. at 15, 114 S.Ct. 361.

By accepting federal funds under the IDEA, defendant assumed a statutory obligation to provide S.V. with a "free" appropriate public education. As the Court recognized in *Florence,* it was within defendant's control to avoid the need to reimburse S.V.'s parents, by giving S.V. the mandated educational services either in a public or a private setting. An award of tuition reimbursement imposes no additional financial burden, instead it "merely requires [defendant] to belatedly pay expenses that it should have paid all along and would have borne in the first instance

had it developed a proper IEP." *Burlington,* 471 U.S. at 370–71, 105 S.Ct. 1996.

As a practical matter, defendant is required to develop an IEP and to choose a placement for a disabled student in a joint effort involving a school official qualified in special education, the student's teachers, parents, and, if appropriate, the student him or herself. 20 U.S.C. § 1414(d); *Burlington,* 471 U.S. at 368, 105 S.Ct. 1996 ("In several places, the [IDEA] emphasizes the participation of the parents in developing the child's educational program and assessing its effectiveness"). The IEP is to be reviewed annually. *Honig,* 484 U.S. at 311, 108 S.Ct. 592. If defendant is in compliance with its statutory obligations under the IDEA, it seems unlikely that defendant could be unaware, for six years, that a disabled student within its jurisdiction was in a private placement incurring tuition expenses for which the parents might seek reimbursement. Thus, I find defendant's suggestion that a two year limitations period is required to enable it to know "in a reasonable time" whether it may be subject to liability under the IDEA to be untenable.[10]

Moreover, tuition reimbursement is an equitable remedy, and "equitable considerations are relevant in fashioning relief." *Florence,* 510 U.S. at 15–16, 114 S.Ct. 361; *see Parents of Student W,* 31 F.3d at 1497. In determining equitable relief, the court "must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." *Florence,* 510 U.S. at 16, 114 S.Ct. 361. Those factors could include, on a proper record, evidence that the parents had been dilatory or were subject to a laches defense. *See Murphy,* 22 F.3d at 1188–89. The record in this case, however, does not appear to support a laches defense, although that issue is not presently before this court.

---

**10.** Interestingly, if the IDEA were subject to 28 U.S.C. § 1658—the catch-all limitations period Congress enacted in 1990—then the applicable period would be four years, much longer than defendant evidently believes is a "reasonable time."

Finally, I also note that the OTCA was enacted as a partial waiver of sovereign immunity, and included certain conditions as a part of the waiver. *Krieger v. Just,* 319 Or. 328, 333, 876 P.2d 754 (1994). Among those conditions was a requirement of timely notice of a claim and commencement of action on the claim within two years. *See* O.R.S. 30.275(2) and (8). Even if plaintiff's claim for tuition reimbursement was somehow analogous to a tort claim covered by the OTCA, I do not believe that the restrictive partial waiver of immunity embodied in the OTCA is consistent with the broad and inclusive federal policy considerations embodied in the IDEA. In this regard, I concur with the First Circuit's observation in *Murphy, supra,* made in the course of declining to adopt the New Hampshire tort claims act limitations period in a claim for compensatory damages under the IDEA, that

> Even if the present claim were somehow considered tort-based, the required "borrowing" methodology does not encourage recourse to state limitations tailored to curtail public liability. *See, e.g., Wilson [v. Garcia],* 471 U.S. at 279, 105 S.Ct. 1938 * * * (noting, in context of § 1983 action, that "the very ineffectiveness of state remedies" may have motivated Congress to impose a federal enforcement scheme against state actors) * * *.

22 F.3d at 1192 n. 8.

In view of "Congress' unquestioned desire to wrest from school officials their former unilateral authority to determine the placement" of disabled children, *Honig,* 484 U.S. at 321, 108 S.Ct. 592, choosing the OTCA as the most analogous cause of action to an IDEA tuition reimbursement claim would appear to be inappropriate. I hold, therefore, that plaintiff's claim in this case is subject to the six year statute of limitation in O.R.S. 12.080(2).

## CONCLUSION

The decision of the hearings officer is reversed, and this matter is remanded for further proceedings consistent with this opinion. Any pending motions are denied as moot, and this appeal is dismissed.